GARY RAY SCHENK, SR., PLAINTIFF V. HNA HOLDINGS, INC., ALSO KNOWN AS TREVIRA, INC. FORMERLY HOECHST CELANESE, INC. AND FIBER INDUSTRIES, INC., DEFENDANT

DONALD LEE BELL, PLAINTIFF V. HNA HOLDINGS, INC., ALSO KNOWN AS TREVIRA, INC. FORMERLY HOECHST CELANESE, INC. AND FIBER INDUSTRIES, INC., DEFENDANT

No. COA03-1094-2
No. COA03-1095-2

(Filed 7 June 2005)

**1. Damages and Remedies— punitive damages—willful and wanton conduct—destruction of memorandum—clear and convincing evidence**

The trial court did not err by granting defendant's motion for directed verdict on the issue of punitive damages in an action seeking compensatory and punitive damages for alleged occupational exposure to asbestos dust and fibers at defendant's polyester manufacturing plant, because: (1) plaintiffs have not proved by clear and convincing evidence that destruction of a memorandum about improper handling of removed insulation asking to be advised of improper handling verbally rather than in writing constituted conscious and intentional disregard of and indifference

to the rights and safety of others; (2) there was no evidence that the destruction of the memorandum was related to the injuries suffered by plaintiffs when the underlying conduct alleged in the memorandum was not necessarily connected to asbestos; (3) although defendants expressly rejected the recommendation of an asbestos handling and removal specialist to use the global method of asbestos removal, no state or federal regulation requires use of this method and the specialist agreed that the asbestos removal was done properly and within the regulations; (4) assuming arguendo that defendant violated OSHA standards, this evidence goes only to the issue of defendant's negligence and does not, by itself, provide sufficient evidence of willful and wan-. ton conduct to present the issue to the jury; (5) the evidence does not support a finding that defendant willfully concealed information about the risks of asbestos exposure; and (6) although plaintiffs contend it was error for the trial court to prevent counsel from questioning prospective jurors on the issue of punitive damages during voir dire, there were no assignments of error to support plaintiffs' arguments.

**2. Appeal and Error— preservation of issues—failure to argue—setoff**

Although plaintiffs contend the trial court erred by allowing defendant a full set-off for prior workers' compensation claim settlements and prior third-party settlement amounts paid to plaintiffs from other sources, this assignment of error is dismissed because: (1) plaintiffs did not assert N.C.G.S. § 97-10.2 nor their present argument to the trial court, nor did they assign the trial court's failure to apply N.C.G.S. § 97-10.2 before conducting the setoff hearing as error in the record on appeal; and (2) plaintiffs made no argument regarding the trial court's failure to apply N.C.G.S. § 97-10.2(e) in their brief on appeal.

Appeal by plaintiffs from judgments entered 3 January 2003 by Judge Charles C. Lamm in Rowan County Superior Court. Heard in the Court of Appeals 30 August 2004. Opinion filed 16 November 2004. On 4 December 2004, plaintiffs filed a Petition for Rehearing. The petition was granted by order of this Court 20 December 2004, reconsidering the case with the filing of additional briefs only. The following opinion supersedes and replaces the opinion filed 16 November 2004.

*Wallace and Graham, P.A., by Mona Lisa Wallace, and Mauriello Law Offices, by Christopher D. Mauriello, for plaintiffs-appellants.*

*Kasowitz, Benson, Torres & Friedman, by Michael E. Hutchins, and Parker Poe Adams & Bernstein, LLP, by Josephine H. Hicks, for defendant-appellee.*

MARTIN, Chief Judge.

Plaintiffs' appeals in these cases present to this Court identical questions of law; therefore, we have consolidated the appeals pursuant to Rule 40 of the North Carolina Rules of Appellate Procedure. N.C. R. App. P. 40 (2005). The appeals arise from lawsuits in which plaintiffs sought compensatory and punitive damages from defendant, HNA Holdings, Inc., for alleged occupational exposure to asbestos dust and fibers at defendant's polyester manufacturing plant.

Summarized only to the extent necessary for an understanding of the issues raised on appeal, the evidence at trial tended to show that defendant, HNA Holdings, Inc., or its predecessors in interest, owned the Celanese Fiber Plant ("Celanese"), located in Salisbury, North Carolina, since operations began in 1966. Like many industrial plants built in the 1960's and 1970's, the Celanese plant was constructed with insulation containing asbestos.

Daniel Construction Company built the Celanese plant and then provided maintenance for the company in specialty areas such as welding, pipe fitting, rigging and insulation. Daniel Construction Company and its successor in interest, Fluor Daniel ("Daniel"), employed plaintiff Schenk as a pipe fitter/welder beginning in 1975. Plaintiff Schenk worked for Daniel periodically until 1992, when Becon Construction Company ("Becon") assumed Daniel's maintenance contract. Plaintiff Schenk continued to work for Becon at Celanese until 1995. As a pipe fitter/welder, plaintiff Schenk was exposed to asbestos-containing insulation both through his work handling pipes and from being around people working with the insulation.

Daniel employed plaintiff Bell as an insulator for Celanese intermittently between 1973 and 1981, and then from 1988 until 1992. In 1992, when Daniel lost the overall maintenance contract to Becon, plaintiff Bell began working as an insulator for Becon and continued until 1995. At trial, plaintiff Bell testified he was exposed to asbestos dust in his work insulating pipes at Celanese while

cutting the insulation on a band saw, "rasping" or smoothing the rough edges of the insulation, and while removing asbestos "in every facet of the plant."

Plaintiffs offered the testimony of James Whitlock ("Whitlock"), an asbestos handling and removal specialist who worked for SOS, a subsidiary of Daniel. Whitlock, who was hired to oversee the removal of asbestos material at Celanese, testified at trial that prior to his arrival in 1990, insulators for Daniel were removing asbestos from the Celanese plant. During his first walk-through of the plant after he was hired, Whitlock observed areas where the asbestos insulation was in a "dilapidated condition and was hanging from the pipes," areas where insulation was on the floor, and areas where insulation was "in piles." He also saw non-authorized individuals "handling and removing asbestos."

Whitlock testified he informed by memorandum the plant industrial hygienist, Dave Smith, the resident engineer, John Winter ("Winter"), and others that "there was a lot of maintenance people that were doing removal of asbestos-containing insulation and that they were leaving the insulation lying around in the areas, and this was cause for concern because it was causing exposure." The next day, Winter asked Whitlock to "collect those letters and rip them up, take the letter out of [his] computer, off [his] hard drive, get it off floppy disk, and do away with it."

For asbestos removal, Whitlock recommended Celanese use a "global abatement procedure." In this procedure, a large area is contained and asbestos is totally removed from the entire area without other workers present. However, Whitlock's recommendation was rejected in favor of a "glove bagging" technique, in which only a small area is contained for removal of a small bit or piece of pipe insulation, rather than abatement of the whole area. Other workers were often present during the glove-bagging method.

Prior to trial, the court denied defendant's motion to strike the punitive damages claim but allowed an alternative motion to exclude any reference to punitive damages or defendant's financial worth until the court determined that plaintiffs had presented sufficient evidence to submit an issue of punitive damages to the jury. At the close of plaintiffs' evidence, after hearing arguments, the trial court granted defendant's motion for directed verdict on the issue of punitive damages.

The jury returned verdicts in favor of plaintiffs, finding the maintenance and construction work performed by plaintiffs was an inherently dangerous activity. The jury also found plaintiffs were injured as a direct result of defendant's negligence. Plaintiffs were awarded compensatory damages for personal injuries. The trial court then conducted a "set-off" hearing and reduced the awards by the amount each plaintiff had recovered as a result of prior settlements from other sources. Plaintiffs appeal.

I.

[1] Plaintiffs first assign error to the trial court's granting of defendant's motion for directed verdict on the issue of punitive damages. They argue there was sufficient evidence that defendant acted recklessly, willfully or intentionally to withstand defendant's motion. We do not agree.

"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991). Our North Carolina statutes establish the requirements for punitive damages as follows:

> Punitive damages may be ·awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
>
> (1) Fraud.
>
> (2) Malice.
>
> (3) Willful or wanton conduct.

N.C. Gen. Stat. § 1D-15(a) (2003). The existence of the aggravating factor must be proved by clear and convincing evidence. N.C. Gen. Stat. § 1D-15(b) (2003). Willful and wanton conduct is defined by statute as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7) (2003). To award punitive damages against a corporation, "the officers, directors, or managers of the cor-

poration [must have] participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c) (2003). The jury awarded plaintiffs compensatory damages; therefore, the issue on appeal is whether there was sufficient evidence that the officers, directors, or managers of defendant, HNA Holdings, Inc., participated in or condoned willful or wanton conduct. *See id.*

Plaintiffs contend Winter's order to destroy Whitlock's memorandum constituted willful and wanton conduct by defendant. However, plaintiffs have not proved by clear and convincing evidence that destruction of the memorandum constituted "conscious and intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. § 1D-5(7). Whitlock testified Winter told him "he wanted to know about these things, to never put anything like that in writing again." Asking to be advised of improper handling of asbestos verbally rather than in writing does not demonstrate an intentional disregard to the safety of others. Furthermore, Winter was a resident engineer for Celanese; plaintiffs did not offer evidence that he was an officer, director or manager as required to award punitive damages against defendant.

In addition, there is no evidence that the destruction of the memorandum was related to the injuries suffered by plaintiffs, as the underlying conduct alleged in the memorandum was not necessarily connected to asbestos. *See Paris v. Kreitz,* 75 N.C. App. 365, 376-77, 331 S.E.2d 234, 243, *disc. review denied,* 315 N.C. 185, 337 S.E.2d 858 (1985). Whitlock admitted at trial that in each instance where he pointed out loose insulation on the floor, "it was taken care of." He also admitted the loose insulation was never tested, and thus he was unsure if any or all of this insulation contained asbestos. Although Whitlock observed non-authorized workers removing insulation, he had no knowledge that they were actually removing insulation that contained asbestos. When asked if he could remember specific occasions when plaintiffs were near loose insulation, Whitlock replied, "I'd say probably . . . ."

The clear and convincing evidence standard is greater than a preponderance of the evidence standard required in most civil cases, *In re Montgomery,* 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984), and requires "evidence which should 'fully convince.' " *In re Smith,* 146 N.C. App. 302, 304, 552 S.E.2d 184, 186 (2001) (quoting *Williams v. Blue Ridge Bldg. & Loan Ass'n,* 207 N.C. 362, 364, 177 S.E.2d 176, 177 (1934)). Plaintiffs did not present clear and convincing evidence of

**SCHENK v. HNA HOLDINGS, INC.**

[170 N.C. App. 555 (2005)]

the connection between the destruction of the memorandum and plaintiffs' alleged harm.

Plaintiffs further argue defendant's express rejection of Whitlock's recommendation to use the global method of asbestos removal demonstrates willful and wanton behavior. Whitlock admitted at trial, however, that no state or federal regulation requires use of the global method. Furthermore, he agreed that the asbestos removal was "done properly and within the regulations."

Plaintiffs contend defendant's violation of Occupational Safety and Health Act ("OSHA") standards was sufficient evidence of willful and wanton conduct to allow the question of punitive damages to go to the jury. OSHA regulations are evidence of custom and can be used to establish the standard of care required in the industry. *Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 401, 549 S.E.2d 867, 869 (2001); *Cowan v. Laughridge Construction Co.*, 57 N.C. App. 321, 325, 291 S.E.2d 287, 290 (1982). However, a violation of OSHA regulations is not negligence *per se* under North Carolina law. *See Cowan*, 57 N.C. App. at 324-25, 291 S.E.2d at 289-90; *accord Geiger v. Guilford Coll. Comm. Volunteer Firemen's*, 668 F.Supp. 492, 497 (M.D.N.C. 1987). Assuming *arguendo* that defendant violated OSHA standards, this evidence goes only to the issue of defendant's negligence and does not, by itself, provide sufficient evidence of willful and wanton conduct to present the issue to the jury.

Relying on *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 103 N.C. App. 288, 407 S.E.2d 860 (1991), *aff'd in part and review improvidently granted in part*, 332 N.C. 1, 418 S.E.2d 648 (1992), plaintiffs argue that defendant willfully concealed the risks of asbestos exposure, rendering punitive damages appropriate. In *Rowan*, this Court affirmed the trial court's denial of the defendant's motion for directed verdict and judgment notwithstanding the verdict on the issue of punitive damages because the defendant defrauded the plaintiff by concealing the hazards of asbestos. *Id.* at 299, 407 S.E.2d at 866. Although this case is similar in that it involves third-party asbestos claims in the premises liability context, the evidence at trial does not support a finding that Celanese willfully concealed information about the risks of asbestos exposure. The evidence tended to show that OSHA regulations were posted on a bulletin board in the main hall at the entrance into Celanese. Clyde Miller, assistant to the safety superintendent from 1969 to 1980, testified that neither he, nor anyone in his department, ever deliberately withheld any information that impacted workers' safety.

According to the testimony of Dow Perry ("Perry"), Environmental Health and Safety Superintendent for Celanese from 1978 to 1990, the corporate office specified asbestos-free insulation for all their locations in 1973. He also testified that dust masks were available to maintenance workers in the 1970's. Celanese issued a standard practice document entitled "Control and Disposal of Asbestos Material" beginning in 1976 requiring, among other things, asbestos to be thoroughly wet before it was removed. Although Perry updated written procedures when he arrived in the department in 1978, the proper methods of removal were already in use.

The 1979 revision of "Control and Disposal of Asbestos Material" contained a section that required workers to "treat insulation as if it contained asbestos." Perry testified this meant workers were to prepare the work area, use personal protection and use work methods based on the OSHA regulations for asbestos removal, regardless of whether the insulation actually did contain asbestos. At least by 1979, air monitoring was implemented in Celanese, including air sampling and the monitoring of Celanese and Daniel workers. Celanese had annual asbestos-training sessions that were presented to all maintenance supervisors and mechanics. In addition, asbestos information was shared with Daniel, and Daniel developed its own asbestos-training program for its workers. To make certain the established procedures were followed, Celanese supervisors performed weekly safety inspections to ensure the mechanics complied with procedures. These policies and procedures do not demonstrate a "conscious and intentional disregard of and indifference to the rights and safety of others" by Celanese as required by statute to award punitive damages. N.C. Gen. Stat. § 1D-5(7) (2003).

Plaintiffs also argue it was error for the trial court to prevent counsel from questioning prospective jurors on the issue of punitive damages during *voir dire*. However, there were no assignments of error in the record to support plaintiffs' arguments and the issue is not properly before us. N.C. R. App. P. 10(c)(1) (2005). We overrule plaintiffs' first assignment of error.

II.

[2] In their second assignment of error, plaintiffs argue the trial court erred by allowing defendant a full set-off for prior workers' compensation claim settlements and prior third-party settlement amounts paid to plaintiffs from other sources. Plaintiffs argue the workers' compensation claim settlements, which compensated plaintiffs for

their inability to earn wages, were for a different injury, i.e., impairment to wage-earning capacity, than the jury award at trial, which compensated plaintiffs for their pain and suffering, future medical expenses and permanent injury. We do not agree.

"The purpose of the North Carolina Workers' Compensation Act is not only to provide a swift and certain remedy to an injured worker, but also to ensure a limited and determinate liability for employers." *Radzisz v. Harley Davidson of Metrolina*, 346 N.C. 84, 89, 484 S.E.2d 566, 569 (1997). The Act, however, was "never intended to provide the employee with a windfall of a recovery from both the employer and the third-party tort-feasor." *Id.* Workers' compensation benefits provide for the employee's inability to earn wages and do not provide for "physical pain or discomfort." *Branham v. Panel Co.*, 223 N.C. 233, 236, 25 S.E.2d 865, 867 (1943). Nevertheless,

> the weight of both authority and reason is to the effect that any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage should be held for a credit on the *total recovery* in any action for the *same injury or damage.*

*Holland v. Utilities Co.*, 208 N.C. 289, 292, 180 S.E. 592, 593-94 (1935) (emphasis added); *see Baity v. Brewer*, 122 N.C. App. 645, 647, 470 S.E.2d 836, 838 (1996). Each plaintiff sued defendants to recover for one injury, i.e., asbestos damage to his lungs. "Where '[t]here is one injury, [there is] still only one recovery.'" *Radzisz*, 346 N.C. at 89, 484 S.E.2d at 569 (citation omitted). We overrule this assignment of error.

In their response to this Court's order upon rehearing, plaintiffs argue the trial court erred in reducing the jury awards by the amount each plaintiff had recovered as a result of prior settlements from other sources. Plaintiffs contend section 97-10.2 of the North Carolina General Statutes requires the third party, defendant, to allege negligence against the employer, Daniel, before a set-off may be imposed by the court.

Although it is true that section 97-10.2 of the North Carolina General Statutes governs the "rights and remedies against third parties[,]" *see* N.C. Gen. Stat. § 97-10.2 (2003); *Jackson v. Howell's Motor Freight, Inc.*, 126 N.C. App. 476, 479, 485 S.E.2d 895, 898 (stating that, "[t]he provisions of N.C.G.S. § 97-10.2(e) govern in all actions by a plaintiff employee against a third party."), *disc. review*

*denied*, 347 N.C. 267, 493 S.E.2d 456 (1997), plaintiffs did not assert this statute, nor their present argument, to the trial court, nor did they assign the trial court's failure to apply section 97-10.2 before conducting the set-off hearing as error in the record on appeal. *See* N.C. R. App. P. 10(a) (2005) (noting that, "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"); N.C. R. App. P. 10(b)(1) (2005) (stating that, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make . . . ."). Plaintiffs made no argument regarding the trial court's failure to apply section 97-10.2(e) in their brief on appeal. *See* N.C. R. App. P. 28(a) (providing that, appellate "[r]eview is limited to questions so presented in the several briefs."); N.C. R. App. P. 28(b)(6) (2005) (stating that, "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). "It is not the role of the appellate courts . . . to create an appeal for an appellant. . . . [T]he Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). We therefore do not review the merits of plaintiffs' argument.

In conclusion, the judgment of the trial court is hereby

Affirmed.

Judges WYNN and McGEE concur.