BERNARD SCARBOROUGH, Plaintiff v. DILLARD'S, INC., Defendant

No. COA05-1191

(Filed 1 August 2006)

## Damages and Remedies— punitive damages—judgment notwithstanding the verdict

The trial court erred in a malicious prosecution case by granting defendant company's motion for judgment notwithstanding the verdict setting aside a jury's punitive damages award, and the case is remanded because the trial court failed to set out its reasons for disturbing the jury's award of punitive damages to plaintiff as required by N.C.G.S. § 1D-50.

Appeal by Plaintiff from judgment entered 13 January 2005 and order entered 24 February 2005 by Judge Hugh B. Campbell, Jr., in District Court, Mecklenburg County. Heard in the Court of Appeals 9 May 2006.

*David Q. Burgess for plaintiff-appellant.*

*Poyner & Spruill, L.L.P., by David W. Long, Douglas M. Martin and Julie W. Hampton for defendant-appellee.*

WYNN, Judge.

"When reviewing the evidence regarding a finding by the trier of fact concerning liability for punitive damages . . ., the trial court shall state in a written opinion its reasons for . . . disturbing the finding or award." N.C. Gen. Stat. § 1D-50 (2005). In this case, Plaintiff appeals the trial court's grant of Dillard's motion for judgment notwithstanding the verdict setting aside a jury's punitive damages award in a malicious prosecution case. Because the trial court failed to set out its reasons for disturbing the jury's award of punitive damages to Plaintiff, we remand this matter for entry of an order consistent with the mandates of section 1D-50.

The evidence presented at trial tended to show that on 27 October 1997, Plaintiff Bernard Scarborough worked in the ladies' shoe department of Dillard's, where he had been employed on a part-time basis for over two years. At about 8:00 p.m., Mr. Scarborough waited on two women, and spent about thirty-five to forty minutes showing them different pairs of shoes. One of the women decided to purchase two pairs of shoes. Mr. Scarborough took the shoes to the

sales register to complete the sale, scanned the barcode on the shoes, and put them into a sales bag.

As Mr. Scarborough completed the transaction, the second woman asked him to check the price on a pair of shoes she wanted to purchase. Mr. Scarborough voided the first woman's shoes so that he could check the price of the shoes for the second woman. Thereafter, Mr. Scarborough scanned the price for the second woman's pair of shoes and walked to the stockroom to get the shoes in the woman's size. Upon discovering that the store did not have the shoes in the width that the woman needed, Mr. Scarborough agreed to stretch the shoes for the woman. In response, the woman and her friend said they would return for the shoes in a few minutes. Mr. Scarborough returned to the stockroom to begin stretching the shoes, and the women left with the bag containing two pairs of shoes that had not been paid for.

The women later returned and asked Mr. Scarborough if he could hold the third pair of shoes until the next day. Mr. Scarborough agreed, and the woman wanting the third pair of shoes wrote her name on a piece of paper. To receive credit for the sale when the woman returned for the shoes, Mr. Scarborough wrote his employee identification number on the piece of paper and attached it to the shoe box.

While preparing to close the shoe department for the evening, Mr. Scarborough discovered that the sales transaction for the two pairs of shoes was missing from the sales registry. He called Steven Gainsboro, a Dillard's store manager, and explained to him that he had mistakenly forgotten to ring two pairs of shoes given to a customer earlier that evening. Mr. Gainsboro told Mr. Scarborough that he would discuss the incident the next day with the shoe department manager, David Hicklin. On the following day, Mr. Scarborough contacted Mr. Hicklin to explain what happened regarding the failed transaction. Mr. Hicklin told Mr. Scarborough that they would discuss it when he came to work that evening.

Upon Mr. Scarborough's arrival at work that evening, he met with Mr. Hicklin, the shoe department manager; Kevin McClusky, a Dillard's store manager; and Officer Collin Wright, an officer with the Charlotte-Mecklenburg Police Department who also worked part-time as a Dillard's security guard. During the two-hour interview, Mr. Scarborough took responsibility for the error and offered to pay the price of the shoes to compensate Dillard's for the loss incurred. Mr.

Scarborough also offered to submit to a polygraph examination. Nonetheless, Mr. McClusky threatened to fire Mr. Scarborough from his part-time job, to "mess up [Mr. Scarborough's] job" at First Union Bank, and to have him charged with the crime of embezzlement if he refused to tell him the names of the customers involved in the transaction. Mr. Scarborough stated he did not know the women and, therefore, could not tell him their names. Officer Wright continued to question Mr. Scarborough regarding the failed transaction and took a written statement from him, which Mr. Scarborough signed and Mr. Hicklin witnessed. Mr. Scarborough was then terminated.

Another Dillard's security guard, Officer Ken Schul, who was also employed as a sergeant with the Charlotte-Mecklenburg Police Department, took statements regarding Mr. Scarborough's failed transaction from three Dillard's employees. Subsequently, Officer Schul met with Assistant District Attorney Nate Proctor regarding his investigation of Mr. Scarborough. After hearing the evidence Officer Schul presented and reviewing the related documentary evidence, Assistant District Attorney Proctor authorized the prosecution of Mr. Scarborough for embezzlement.

Two weeks after the incident, police officers arrested Mr. Scarborough in the atrium of One First Union Center located in uptown Charlotte and escorted him through the atrium in handcuffs to a police car. Upon his release from jail, Mr. Scarborough returned to his job at First Union Bank and was told that because of the embezzlement charges, his employment with the bank had been terminated and that he would not be eligible to return to work unless the charges were cleared.

Mr. Scarborough was tried on the embezzlement charge in Superior Court, Mecklenburg County on 27-28 May 1998, and the jury returned a verdict of not guilty. On 4 April 2001, Mr. Scarborough filed suit against Dillard's for malicious prosecution.

At trial, Mr. Scarborough testified to the events that occurred, including those leading up to, during, and after his prosecution. Mr. Scarborough also presented two character witnesses and another witness, his fiancée, who testified to the effect of the prosecution on Mr. Scarborough. At the close of Mr. Scarborough's evidence, Dillard's moved for a directed verdict, which the trial court denied. Dillard's then presented evidence through the testimony of Officers Schul and Wright regarding their investigation of Mr. Scarborough. The assistant district attorneys who authorized and

SCARBOROUGH v. DILLARD'S, INC.

[179 N.C. App. 127 (2006)]

prosecuted the embezzlement case against Mr. Scarborough also testified on Dillard's behalf.

On 7 January 2005, the jury returned a verdict in Mr. Scarborough's favor, awarding him $30,000 for malicious prosecution and $77,000 in punitive damages. Thereafter, Dillard's filed a motion for judgment notwithstanding verdict. On 24 February 2005, the trial court entered an order allowing Dillard's motion to set aside the punitive damages award, but denying it as to the damages awarded for the malicious criminal proceeding. Mr. Scarborough appeals to this Court.

_____

The sole issue on appeal is whether the trial court erred in granting Dillard's motion for judgment notwithstanding the verdict to set aside Mr. Scarborough's punitive damages award.

Section 1D-50 of the North Carolina General Statutes provides in pertinent part:

> When reviewing the evidence regarding a finding by the trier of fact concerning liability for punitive damages . . . , or regarding the amount of punitive damages awarded, the trial court shall state in a written opinion its reasons for upholding or disturbing the finding or award. In doing so, the court shall address with specificity the evidence or lack thereof, as it bears on the liability for or the amount of punitive damages, in light of the requirements of this Chapter.

N.C. Gen. Stat. § 1D-50.

In this case, the trial court entered an order granting Dillard's motion to set aside the jury's punitive damages award on 24 February 2005. Contrary to the requirements of section 1D-50, the 24 February order contains no reasons as to why the trial court set aside the jury's verdict on the punitive damages claim. Although it is not clear in the record, it appears that subsequent to the trial court's 24 February order and the filing of the notice of appeal from that order, Mr. Scarborough requested that the trial court review the award of punitive damages under section 1D-50 of the North Carolina General Statutes. Pursuant to Mr. Scarborough's request and in accordance with section 1D-50, the trial court entered an order on 28 March 2005, finding

> . . . that the plaintiff presented insufficient evidence from which a jury could properly award punitive damages pursuant to G.S.

§ 1D-15. Specifically, the Court finds no contention nor evidence of fraud on the part of the defendant; insufficient evidence from which a jury could find clear and convincing evidence of malice as defined in G.S. § 1D-5(5); and insufficient evidence from which a jury could find clear and convincing evidence of willful or wanton conduct as defined in G.S. § 1D-5(7). Thus, the Court granted defendant's Motion pursuant to Rule 50(b) thereby setting aside that portion of the judgment relating to punitive damages.

Based upon the 28 March order, Mr. Scarborough contends the trial court erred in setting aside his punitive damages award on grounds that he did not present clear and convincing evidence of malice and willful or wanton conduct. However, we do not reach the merits of Mr. Scarborough's argument because the trial court did not have jurisdiction to enter the 28 March order, as Mr. Scarborough had already filed his notice of appeal to this Court, thus, divesting the trial court of jurisdiction.

In general, an appeal removes a case from the trial court, and the trial court is thereafter without jurisdiction to proceed on the matter until the case is returned by mandate of the appellate court. *Upton v. Upton*, 14 N.C. App. 107, 109, 187 S.E.2d 387, 388 (1972). Here, Mr. Scarborough filed his notice of appeal in this Court on 15 March 2005, and the trial court did not enter its order pursuant to section 1D-50 of the North Carolina General Statutes until 28 March 2005. Therefore, the trial court did not have jurisdiction to enter the 28 March 2005 order.

Moreover, in his notice of appeal, Mr. Scarborough only appeals from the "[j]udgment entered by the Honorable Hugh B. Campbell, Jr., in this action on January 13, 2005, and the Order entered by the Honorable Hugh B. Campbell, Jr., in this action on February 24, 2005." Neither of the orders Mr. Scarborough appeals from contains the trial court's reasons for disturbing the jury's punitive damages award as required under section 1D-50 of the North Carolina Statutes. *See* N.C. Gen. Stat. § 1D-50 ("When reviewing the evidence regarding a finding by the trier of fact concerning liability for punitive damages . . ., the trial court shall state in a written opinion its reasons for . . . disturbing the finding or award."). Because the orders on appeal do not contain the trial court's required explanation for disturbing the jury's punitive damages award as mandated by section 1D-50 of the North Carolina Statutes, we remand this case to the trial court to afford the court proper jurisdiction to issue a written opinion consistent with the mandates of the statute.

We note that upon remand, the trial court should consider that we review the trial court's grant of a judgment notwithstanding the verdict *de novo. Kearns v. Horsley*, 144 N.C. App. 200, 207, 552 S.E.2d 1, 6 (2001). On appeal, the standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict, whereby this Court determines whether the evidence was sufficient to go to the jury. *Id.* The standard is high for the moving party, as the motion should be denied if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case. *Monin v. Peerless Ins. Co.*, 159 N.C. App. 334, 340, 583 S.E.2d 393, 398 (2003). "The evidence supporting the plaintiff's claims must be taken as true, and all contradictions, conflicts, and inconsistencies must be resolved in the plaintiff's favor, giving the plaintiff the benefit of every reasonable inference." *Newton v. New Hanover County Bd. of Educ.*, 342 N.C. 554, 563, 467 S.E.2d 58, 65 (1996).

To properly assess an award of punitive damages against a corporation, the court must find that there was sufficient evidence to justify a jury's finding of either fraud, malice, or willful or wanton conduct by clear and convincing evidence. N.C. Gen. Stat. § 1D-15(a) (2005). A party need only show one of these circumstances to recover punitive damages. *Williams v. Boylan-Pearce, Inc.*, 69 N.C. App. 315, 320, 317 S.E.2d 17, 20 (1984), *aff'd per curiam*, 313 N.C. 321, 327 S.E.2d 870 (1985).

Remanded.

Judges GEER and STEPHENS concur.