BERNARD SCARBOROUGH, Plaintiff v. DILLARD'S INC., formerly Dillard Department Stores, Inc., a North Carolina Corporation, Defendant

No. COA07-281

(Filed 5 February 2008)

**Malicious Prosecution— punitive damages—willful or wanton conduct—malice**

The trial court erred by granting judgment notwithstanding the verdict (JNOV) in a malicious prosecution case in regard to the jury's punitive damages award, and the grant of JNOV as to punitive damages is reversed, because: (1) an employer's failure to fully investigate an incident before causing an employee to be prosecuted for embezzlement is sufficient for a finding of reckless and wanton disregard of the employee's rights, and there was sufficient evidence of willful or wanton conduct including defendant store's possession of the paper with the customer name they were attempting to retrieve from plaintiff, defendant's failure to attempt to find or contact the customer, and the store manager's threats to "mess up" plaintiff's full-time job; (2) there was sufficient evidence of malice including the store manager mentioning a prior difficulty with plaintiff evidencing personal ill-will; and (3) the requirement under N.C.G.S. § 1D-15(c) that the officers, directors, or managers participated in or condoned the conduct giving rise to punitive damages was satisfied since the store manager participated in the conduct constituting the aggravating factors of willful and wanton conduct and malice.

Judge HUNTER dissenting.

Appeal by plaintiff from order entered 8 January 2007 by Judge Hugh B. Campbell, Jr. in District Court, Mecklenburg County. Heard in the Court of Appeals 18 September 2007.

*David Q. Burgess, for plaintiff-appellant.*

*Poyner & Spruill, L.L.P., by David W. Long and Douglas M. Martin, for defendant-appellee.*

WYNN, Judge.

A motion for judgment notwithstanding the verdict should be denied if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case.[1] Here, the plaintiff argues the trial court erred in granting the defendant's motion for judgment notwithstanding the verdict as to punitive damages because there was sufficient evidence to support the jury's punitive damages award. Because we find more than a scintilla of evidence to support the jury's punitive damages award, we must reverse the trial court's grant of judgment notwithstanding the verdict as to punitive damages.

The evidence presented at trial tended to show that on 27 October 1997, Plaintiff Bernard Scarborough worked in the ladies' shoe department of Dillard's Department Store, where he had been employed part-time for approximately two years. Around 8:00 p.m., Mr. Scarborough waited on two women for approximately thirty-five to forty minutes, showing them about twenty pairs of shoes. When one of the women decided to purchase two pairs of shoes, Mr. Scarborough took the shoes to the register, scanned the shoes, and placed the two pairs in a bag. As Mr. Scarborough completed the transaction, the other woman came to the register and asked him about trying on a pair of shoes. Mr. Scarborough voided the first transaction so that he could check the price of the shoes for the second woman, and so that his employee number would not remain in the register when he went into the stockroom to look for the shoes. Mr. Scarborough was unable to find shoes in the woman's width and agreed to stretch the shoes for her. The two women stated that they would return for the third pair in a few minutes. The two women then left Dillard's with two pairs of shoes that were not paid for.

The women later returned and asked Mr. Scarborough if he could hold the third pair of shoes until the next day. Mr. Scarborough

---

1. *Scarborough v. Dillard's, Inc.*, 179 N.C. App. 127, 132, 632 S.E.2d 800, 803 (2006); N.C. Gen. Stat. § 1D-15 (2005).

agreed, and the woman wanting the shoes wrote her name down on a piece of paper, which Mr. Scarborough attached to the shoe box along with his employee number so he could receive credit for the sale.

After the two women left, two employees who had watched the transaction, Lynette Withers and Selma Brown, looked at the journal tape and confirmed that the women had taken the first two pair of shoes without paying for them.[2] Ms. Brown told Mr. Scarborough that the sales transaction was missing, so he called Steven Gainsboro,[3] the manager on duty that night, to tell him what happened. Mr. Gainsboro told Mr. Scarborough that he would discuss the incident the next day with David Hicklin, the shoe department manager.

When Mr. Scarborough arrived at Dillard's the next evening, he met with Mr. Hicklin, Kevin McClusky, the store manager, and Officer Cullen Wright, a Dillard's loss prevention employee, who also worked full time as an officer for the Charlotte-Mecklenburg Police Department. During the two-hour interview, Mr. Scarborough explained that he had made a mistake, took responsibility for the incident, and offered to pay Dillard's for the shoes. Mr. Scarborough also offered to submit to a polygraph exam. Mr. McClusky accused Mr. Scarborough of knowing the two women and threatened to have him prosecuted for embezzlement and ruin his full-time job at First Union Bank if he did not provide the names of the women. Mr. Scarborough stated that he did not know the women and therefore was unable to provide their names, although he did mention the name "Betty." Officer Wright also participated in questioning Mr. Scarborough about the incident and took a written statement from him. At the end of the interview, Mr. McClusky terminated Mr. Scarborough for embezzlement.

After Mr. Scarborough's termination, Officer Ken Schul, another Dillard's security guard who was employed full time as a sergeant for the Charlotte-Mecklenburg Police Department, took statements from three Dillard's employees—Ms. Withers, Ms. Brown, and Mr. Gainsboro—about Mr. Scarborough's failed transaction. On 12 November 1997, Officer Schul met with Assistant District Attorney Nathaniel Proctor to present a case against Mr. Scarborough. Assistant District Attorney Proctor then authorized the prosecution of Mr. Scarborough for embezzlement.

2. The register journal tape showed that the transaction for the first two pairs of shoes had been voided but not re-rung. The tape also showed that the transaction for the third pair of shoes had not included sales tax, which would support the contention that it was a price check.

3. We note that Gainsboro is also spelled "Gainesborough" in the transcript.

SCARBOROUGH v. DILLARD'S INC.

[188 N.C. App. 430 (2008)]

Approximately two weeks after his termination from Dillard's, Mr. Scarborough was arrested in the atrium of One First Union Center in Charlotte, on his way to his office. Uniformed police officers handcuffed Mr. Scarborough and escorted him outside to a police car. Upon his release from jail, Mr. Scarborough returned to First Union to find that his employment was terminated because of his arrest for embezzlement, and he would only be eligible to return to work if the charges against him were cleared.

On 27-28 May 1998, Mr. Scarborough was tried for embezzlement in Superior Court, Mecklenburg County resulting in a jury verdict of not guilty.

On 4 April 2001, Mr. Scarborough initiated this action for malicious prosecution. Following a trial in January 2005, the jury returned a verdict in Mr. Scarborough's favor, awarding him $30,000 in compensatory damages and $77,000 in punitive damages for malicious prosecution. On 24 February 2005, the trial court granted Dillard's motion for judgment notwithstanding the verdict and entered an order setting aside the punitive damages award. Mr. Scarborough appealed, and on 1 August 2006, this Court remanded the case because, contrary to N.C. Gen. Stat. § 1D-50, the trial court's 24 February 2005 order contained no reasons as to why the trial court set aside the jury verdict. *Scarborough v. Dillard's, Inc.*, 179 N.C. App. 127, 130, 632 S.E.2d 800, 803 (2006). Upon remand, the trial court filed an order on 8 January 2007 indicating the basis for its judgment not withstanding the verdict. Mr. Scarborough appealed from that order.

On appeal, Mr. Scarborough contends the trial court erred by granting the judgment not withstanding the verdict because there was sufficient evidence to support the jury's punitive damages award. We must agree.[4]

We review the trial court's grant of a judgment notwithstanding the verdict *de novo*, and the standard of review is well established:

On appeal the standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict, whereby

---

4. We deny Dillard's motion to dismiss because Mr. Scarborough correctly appeals from the trial court's 8 January 2007 order. As we stated in the previous *Scarborough* case, the 24 February 2005 order was in error because "[c]ontrary to the requirements of section 1D-50 . . . [it] contains no reasons as to why the trial court set aside the jury's verdict on the punitive damages claim." *Scarborough*, 179 N.C. App. at 130, 632 S.E.2d at 803.

this Court determines whether the evidence was sufficient to go to the jury. The standard is high for the moving party, as the motion should be denied if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case. The evidence supporting the plaintiff's claims must be taken as true, and all contradictions, conflicts, and inconsistencies must be resolved in the plaintiff's favor, giving the plaintiff the benefit of every reasonable inference.

*Id.* at 132, 632 S.E.2d at 803-04 (internal citations omitted). Our Supreme Court has defined "scintilla of evidence" as "very slight evidence." *State v. Lawrence*, 196 N.C. 562, 582, 146 S.E. 395, 405 (1929).

Punitive damages may only be awarded where the claimant proves the defendant is liable for compensatory damages and proves the existence of fraud, malice, or willful or wanton conduct by clear and convincing evidence. N.C. Gen. Stat. § 1D-15. A party need only show one of the aggravating factors to recover punitive damages. *Scarborough*, 179 N.C. App. at 132, 632 S.E.2d at 804 (citing *Williams v. Boylan-Pearce, Inc.*, 69 N.C. App. 315, 320, 317 S.E.2d 17, 20 (1984), *aff'd per curiam*, 313 N.C. 321, 327 S.E.2d 870 (1985)). Under our General Statutes, punitive damages may be awarded against a corporation only if "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c).

Mr. Scarborough first argues that the judgment notwithstanding the verdict was in error because there was sufficient evidence of willful or wanton conduct. We agree.

As defined in our punitive damages statute, willful or wanton means "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7) (2005). Willful or wanton conduct is "more than gross negligence." *Id.* An employer's failure to fully investigate an incident before causing an employee to be prosecuted for embezzlement is sufficient for a finding of reckless and wanton disregard of the employee's rights. *See Jones v. Gwynne*, 312 N.C. 393, 409-10, 323 S.E.2d 9, 19 (1984) (holding that the jury could have found the employer's superficial and cursory investigation of an employee's alleged embezzlement to be a "reckless and wanton disregard of the plaintiff's rights"); *Williams*, 69 N.C. App. at 320, 317 S.E.2d at 20-21 (holding that the jury could find the plaintiff-employee was prose-

cuted in a reckless and wanton manner, where the employee who had plaintiff arrested failed to take an inventory, did not check plaintiff's sales book, and did not check with anyone regarding plaintiff's personnel record or character).

Mr. Scarborough argues that Dillard's acted willfully and wantonly by quickly procuring his prosecution for embezzlement, despite evidence that Mr. Scarborough made a mistake due to forgetfulness, and knowing that it would cause him to lose his full-time job at First Union Bank. Mr. Scarborough testified that during the meeting the day after the failed transaction, Mr. McClusky accused him of knowing the two women and repeatedly threatened to "mess up" his job at First Union if Mr. Scarborough did not tell him who the customers were. Mr. Scarborough testified that he told Mr. McClusky that he did not know the women, but he believed one of them was named Betty. At the time of the meeting, Dillard's was already in possession of the piece of paper with the name Betty Jordan on it, as Mr. Scarborough had placed it on the shoe box he had put on hold for one of the women. Officer Wright testified that although he did not personally find the paper with "Betty Jordan" written on it, a document was found in a pair of shoes that was in Dillard's possession.

That Mr. McClusky threatened to "mess up" Mr. Scarborough's full-time job is also evidence that he knew prosecuting him for embezzlement would harm Mr. Scarborough. Giving Mr. Scarborough the benefit of every reasonable inference, Dillard's possession of the paper with the name "Betty Jordan," its failure to attempt to find or contact Ms. Jordan, and Mr. McClusky's threats to "mess up" Mr. Scarborough's full-time job at First Union, present more than a scintilla of evidence that Dillard's showed a conscious and intentional disregard for Mr. Scarborough's rights. *See* N.C. Gen. Stat. § 1D-5(7).

Mr. Scarborough next argues that the judgment notwithstanding the verdict was in error because there was sufficient evidence of malice. We agree.

As defined by the punitive damages statute, malice means "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C. Gen. Stat. § 1D-5(5).

Here, Mr. Scarborough argues that the jury could have inferred ill will from evidence of a prior difficulty between Mr. Scarborough and Mr. McClusky and from evidence that Dillard's considered him to be inept. Mr. Scarborough testified that when he met with Dillard's

management the day after his failed transaction, the first thing Mr. McClusky said to him was, "I cannot believe you're in my office again." Mr. McClusky was referring to Mr. Scarborough's recent written reprimand for referring a customer to another store for tennis shoes. Taking the evidence supporting Mr. Scarborough's claims as true and resolving any inconsistencies in his favor, we find that Mr. McClusky's mention of a prior difficulty with Mr. Scarborough is more than a scintilla of evidence of his personal ill will toward Mr. Scarborough.

Although we conclude there is sufficient evidence of malice and willful and wanton conduct, for punitive damages to be awarded against Dillard's, we must also determine whether Dillard's officers, directors, or managers participated in or condoned the conduct giving rise to punitive damages.[5] N.C. Gen. Stat. § 1D-15. We have defined "manager" as "one who conducts, directs, or supervises something." *Miller v. B.H.B. Enterprises, Inc.*, 152 N.C. App. 532, 540, 568 S.E.2d 219, 225 (2002).

Here, the record shows that Mr. McClusky was the store manager of Dillard's at the time Mr. Scarborough was terminated and prosecuted. Mr. Scarborough testified that during his meeting with Mr. McClusky, Mr. Hicklin, and Officer Wright, Mr. McClusky repeatedly threatened to charge him with embezzlement and "mess up" his full-time job at First Union if he did not tell him the names of the customers. Mr. Scarborough also testified that Mr. McClusky stated to him, "I cannot believe you're in my office again." Because Mr. McClusky participated in the conduct constituting the aggravating factors of willful and wanton conduct and malice, we find that section 1D-15(c) is satisfied, thereby subjecting Dillard's to punitive damages. N.C. Gen. Stat. § 1D-15(c).

In sum, because we find sufficient evidence of malice, willful and wanton conduct, and manager participation to support the jury's punitive damages award, we must reverse the trial court's grant of judgment notwithstanding the verdict as to punitive damages.

Reversed.

Judge JACKSON concurs.

5. The trial court's 8 January 2007 order concluded "[t]here was no clear and convincing evidence that Dillard's (the corporation) instituted a malicious prosecution of the plaintiff," but it is not clear whether the order was based on insufficient evidence of malice, of willful and wanton conduct, or of management involvement.

**SCARBOROUGH v. DILLARD'S INC.**

[188 N.C. App. 430 (2008)]

Judge HUNTER dissents in a separate opinion.

HUNTER, Judge, dissenting.

Because I believe Bernard Scarborough ("plaintiff") did not prove by clear and convincing evidence that defendant's actions constituted willful or wanton conduct or malice warranting punitive damages, I respectfully dissent.

## I.

The majority states that our standard of review is whether or not a scintilla of evidence existed to support the jury's award. This is true for our review of the granting of a motion for judgment notwithstanding the verdict. However, per statute, the evidentiary standard for punitive damages is whether the existence of an aggravating factor—fraud, malice, or willful or wanton conduct—was proven by "clear and convincing evidence." N.C. Gen. Stat. § 1D-15(b) (2005). One of this Court's previous cases is particularly helpful in clarifying the interaction between these standards.

In *Schenk v. HNA Holdings, Inc.*, 170 N.C. App. 555, 559, 613 S.E.2d 503, 507, *disc. review denied*, 360 N.C. 177, 626 S.E.2d 649 (2005), this Court considered a trial court's grant of the defendant's motion for directed verdict on the issue of punitive damages. As we have noted many times, "[o]n appeal, the standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict[.]" *Scarborough v. Dillard's, Inc.*, 179 N.C. App. 127, 132, 632 S.E.2d 800, 803 (2006).

"The standard of review . . . is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." Our North Carolina statutes establish the requirements for punitive damages as follows:

Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:

(1) Fraud.

(2) Malice.

(3) Willful or wanton conduct.

N.C. Gen. Stat. § 1D-15(a) (2003). The existence of the aggravating factor must be proved by clear and convincing evidence. N.C. Gen. Stat. § 1D-15(b) (2003). . . . To award punitive damages against a corporation, "the officers, directors, or managers of the corporation [must have] participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c) (2003). . . . [T]he issue on appeal is whether there was sufficient evidence that the officers, directors, or managers of defendant, HNA Holdings, Inc., participated in or condoned willful or wanton conduct. *See id.*

Plaintiffs contend Winter's order to destroy Whitlock's memorandum constituted willful and wanton conduct by defendant. However, *plaintiffs have not proved by clear and convincing evidence* that destruction of the memorandum constituted "conscious and intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. § 1D-5(7).

*Schenk*, 170 N.C. App. at 559-60, 613 S.E.2d at 507 (citations omitted) (emphasis added). The Court went on to examine the other evidence brought by the defendant under a clear and convincing standard. *Id.* at 560-61, 613 S.E.2d at 507-08. When the Court concluded no sufficient evidence had been presented, it overruled the plaintiffs' assignment of error regarding the directed verdict. *Id.* at 562, 613 S.E.2d at 509.

.II.

As such, it seems clear that the question before this Court is whether plaintiff provided clear and convincing evidence of willful or wanton conduct or malice on the part of defendant. Because I believe no such evidence was presented, I would affirm.

"The clear and convincing evidence standard is greater than a preponderance of the evidence standard required in most civil cases and requires 'evidence which should "fully convince." ' " *Schenk*, 170 N.C. App. at 560, 613 S.E.2d at 508 (citation omitted). Punitive damages may be awarded against a corporation only if "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c). Thus, plaintiff must prove that (1) the officers, directors, or managers of defendant Dillard's participated in or condoned (2) conduct that was (a) fraudulent, (b) malicious, or (c) willful and wanton. This he cannot do.

### A.

First, as to the conduct of Dillard's employees, we note that plaintiff did not assign error to any of the trial court's findings of fact, and as such, they are presumed to be correct. *See Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000). Among these unchallenged findings of fact are these: Schul met with the assistant district attorney solely in his capacity with the Charlotte-Mecklenburg Police Department, not as a part-time employee of Dillard's; Dillard's would not have been allowed to take part in any way in the initiation of a felony prosecution; Dillard's took no part in the proceedings before the grand jury to obtain an indictment against plaintiff; and there was no evidence at trial that Dillard's had any role in the location, timing, or circumstances of plaintiff's arrest. Taking these findings as true, it is clear that plaintiff did not provide clear and convincing evidence to the trial court that Dillard's officers, directors, or managers took part in the actions complained of. As such, he has not satisfied the first element to obtain punitive damages.

### B.

Plaintiff next argues that there was sufficient evidence of (a) willful or wanton or (b) malicious conduct. I disagree.

### 1.

In 1995, our legislature enacted a statute regarding punitive damages that heightened the standard of proof for the "aggravating factors"—fraud, malice, or willful or wanton conduct—to clear and convincing evidence, and also established that punitive damages will not be awarded on the basis of vicarious liability. 1995 N.C. Sess. Laws ch. 514, § 1D-15. "Willful or wanton" means "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7) (2005). Willful or wanton conduct is "more than gross negligence." *Id.*

Plaintiff argues that Dillard's acted willfully and wantonly by quickly procuring his prosecution for embezzlement, despite evidence that plaintiff made a mistake due to forgetfulness and knowing that it would cause him to lose his full-time job at First Union Bank. In support of this claim, plaintiff cites two cases in which our Supreme Court found sufficient evidence for punitive damages based on "a reckless and wanton disregard of plaintiff's rights." *See Jones v.*

*Gwynne*, 312 N.C. 393, 409-10, 323 S.E.2d 9, 18 (1984) (holding that the jury could have found the employer's superficial and cursory investigation of an employee's alleged embezzlement " 'reckless and wanton disregard of the plaintiff's rights' "); *Williams v. Boylan-Pearce, Inc.*, 69 N.C. App. 315, 320, 317 S.E.2d 17, 20-21 (1984) (holding that the jury could find that the plaintiff-employee was prosecuted in a reckless and wanton manner where the employee who had plaintiff arrested for theft failed to seek out existing evidence in plaintiff's favor).

However, these cases were decided prior to the enactment of our current punitive damages statute in 1995, discussed above. As such, the standard of proof in those cases was not clear and convincing, and these cases are no longer applicable.

Plaintiff further argues that Dillard's acted willfully and wantonly by failing to inquire into his character or record and failing to obtain statements from all possible witnesses, including Betty Jordan, one of the two women who received the shoes, before terminating him and procuring his prosecution for embezzlement. Plaintiff also argues that Dillard's failed to present exculpatory evidence to the police, as the police officers were not told that Mr. Gainsboro, the manager on duty on the night of the incident, stated that he thought Mr. Scarborough made "a mistake."

However, Officers Wright and Schul took various steps to investigate plaintiff's possible embezzlement. The day after the incident, before plaintiff was terminated, he was interviewed by Mr. Hicklin, Mr. McClusky, and Officer Wright, and Officer Wright took a written statement from him. At that time, Dillard's had the register tape from the previous evening confirming that no payment was received for the shoes, and Mr. Gainsboro had spoken to witnesses Ms. Brown and Ms. Withers, the latter of whom believed Mr. Scarborough had purposely given away the shoes. Before Officer Schul met with Assistant District Attorney Proctor to discuss the embezzlement charge, he interviewed and obtained written statements from Ms. Brown, Ms. Withers, and Dillard's manager Mr. Gainsboro. Ms. Withers stated that Mr. Gainsboro seemed to think that Mr. Scarborough made "a mistake," but Mr. Gainsboro did not assert such in his statement to police. Although Dillard's could have conducted a more thorough investigation, including interviewing positive character witnesses and Betty Jordan, Mr. Scarborough has not proven by clear and convincing evidence that Dillard's actions constituted a reckless and wanton disregard of his rights.

2.

Plaintiff next argues that there was sufficient evidence of malice. I disagree.

"Malice" is defined by statute as "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C. Gen. Stat. § 1D-5(5) (2005). Plaintiff argues that the jury could have inferred such ill will from evidence that Dillard's store manager, Mr. McClusky, had previously reprimanded him for referring a customer to another shoe store, and from evidence that Dillard's considered plaintiff to be inept. These rationales are speculative and depend on a series of inferences that could have been made by the jury, but certainly do not constitute clear and convincing evidence that defendant acted with malice.

III.

Because I believe that the correct standard in this case is the clear and convincing standard set out by statute, and that plaintiff has not met that standard, I would affirm.