BERNARD SCARBOROUGH v. DILLARD'S, INC., FORMERLY DILLARD DEPARTMENT STORES, INC., A NORTH CAROLINA CORPORATION

No. 112A08

(Filed 11 December 2009)

**1. Damages— punitive—judgment notwithstanding the verdict—standard for appellate review**

In reviewing a trial court's ruling on a motion for judgment notwithstanding the verdict on punitive damages, appellate courts must determine whether the nonmovant produced clear and convincing evidence from which a jury could reasonably find one or more of the statutory aggravating factors required by N.C.G.S. § 1D-15(a) and that the aggravating factor was related to the injury for which compensatory damages were awarded. Evidence that is only more than a scintilla cannot satisfy the nonmoving party's threshold statutory burden of clear and convincing evidence.

**2. Appeal and Error— findings—directed verdict and judgment notwithstanding the verdict—not binding on appeal**

Although findings are normally binding on the appellate court when not challenged by appellant, trial court rulings on motions for directed verdict and judgment notwithstanding the verdict should not involve findings, and any findings that are made are not binding on appeal. Findings provide a convenient, familiar format for the trial court to state its reasons for upholding or disturbing a final award, but those findings involve merely a recitation of the evidence rather than a determination of its truth or weight.

**3. Malicious Prosecution— malice—investigation into alleged embezzlement—sufficiency of evidence**

Plaintiff did not present sufficient evidence of willful or wanton conduct or malice sufficient for punitive damages in a

SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

malicious prosecution action where plaintiff was a shoe salesman who was charged with embezzlement after two customers left the store without paying for shoes. Plaintiff contended that defendant's investigation in the store was superficial and cursory, but the investigation was handled by Charlotte-Mecklenburg Police Department officers, who also worked at the store, and the prosecutor did not ask for any additional investigation or information when presented with the case. Although the investigation may not have been perfect, plaintiff did not adduce any evidence that would have changed the officers' decision to present the case to an Assistant District Attorney.

**4. Malicious Prosecution— employee charged with embezzlement—reckless disregard of employee's rights—sufficiency of evidence**

A malicious prosecution plaintiff did not present sufficient evidence of a reckless disregard of his rights in procuring his prosecution for embezzlement despite evidence that he simply made a mistake in forgetting to charge two customers for shoes. Refusing to accept an employee's explanation and telling the employee the consequences of the situation during an interview does not equate with reckless disregard of an employee's rights.

**5. Malicious Prosecution— malice—comments from store manager—evidence not sufficient**

A malicious prosecution plaintiff's argument that there was evidence of malice in comments from plaintiff's store manager before his arrest for embezzlement was too speculative.

Justice TIMMONS-GOODSON dissenting.

Justice HUDSON joins in this dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 188 N.C. App. 430, 655 S.E.2d 875 (2008), reversing entry of judgment notwithstanding the verdict in defendant's favor as to punitive damages on 8 January 2007 by Judge Hugh B. Campbell, Jr. in District Court, Mecklenburg County. Heard in the Supreme Court 15 October 2008.

*David Q. Burgess for plaintiff-appellee.*

*Poyner & Spruill LLP, by David W. Long, Douglas Martin, and John W. O'Hale, for defendant-appellant.*

SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

PARKER, Chief Justice.

The issue before the Court on this appeal is whether the trial court erred in granting defendant judgment notwithstanding the verdict as to punitive damages. For the reasons stated herein, we conclude that the trial court did not err, and the decision of the Court of Appeals is reversed.

This case arises out of an action for malicious prosecution instituted by plaintiff Bernard Scarborough as the result of his having been indicted, tried, and acquitted of embezzlement from his employer, defendant Dillard's, Inc. At the outset, we note that the sufficiency of the evidence to support the underlying tort of malicious prosecution is not before the Court in that defendant did not cross appeal the trial court's denial of its motion for judgment notwithstanding the verdict (JNOV) as to the jury's determination of liability for malicious prosecution.

The evidence presented at trial tended to show that on 27 October 1997, plaintiff worked in the ladies' shoe department at Dillard's, where he had been employed part-time for approximately two years. Around 8:00 p.m., plaintiff waited on two women for approximately thirty-five to forty minutes, showing them about twenty pairs of shoes. When one of the women decided to purchase two pairs of shoes, plaintiff took the shoes to the register, scanned the shoes, and placed them in a bag. Before plaintiff completed this transaction, the other woman came to the register and asked him about trying on a pair of shoes. Plaintiff voided the first transaction so he could check the price of the shoes for that customer and to prevent his employee number from remaining in the register when he went into the stockroom to look for the shoes. Plaintiff was unable to find shoes in the width the woman needed but agreed to stretch the shoes for her. The two women stated that they would return for the third pair. The women then left Dillard's with two pairs of shoes for which no payment had been made.

The women later returned and asked plaintiff if he could hold the third pair of shoes until the next day. Plaintiff agreed, and the woman who wanted the shoes wrote her name, Betty Jordan, on a piece of paper which plaintiff attached to the shoe box. Plaintiff also wrote his employee number on the piece of paper so he could receive credit for the sale.

After the women left, two other shoe department employees, Lynette Withers and Selma Brown, who had watched the transaction,

commented to plaintiff that he had had a big sale and asked if they could look at the journal tape to see what the amount was. Plaintiff agreed. Upon looking at the tape Withers and Brown confirmed that the women had taken the first two pairs of shoes without paying for them. Ms. Brown told plaintiff that the sales transaction was missing. Plaintiff then called Steven Gainsboro, the manager on duty that night, to tell him what had happened. Mr. Gainsboro told plaintiff he would discuss the incident the next day with David Hicklin, the shoe department manager.

When plaintiff arrived at Dillard's the next evening, he met with Mr. Hicklin, Kevin McCluskey, the store manager, and Sergeant Cullen Wright, a Dillard's loss prevention employee, who also worked full time as an officer for the Charlotte-Mecklenburg Police Department (CMPD). During the two-hour interview, plaintiff explained that he had made a mistake, took responsibility for the incident, and offered to pay Dillard's for the shoes. Plaintiff also offered to submit to a polygraph exam. Mr. McCluskey accused plaintiff of knowing the two women and threatened to have him prosecuted for embezzlement and ruin his full-time job at First Union National Bank if he did not provide the names of the women. Plaintiff told Mr. McCluskey that he did not know the women and could not provide their names. Sergeant Wright also participated in questioning plaintiff about the incident and took a written statement from him. At the end of the interview, Mr. McCluskey terminated plaintiff for embezzlement.

After plaintiff's termination, Sergeant Ken Schul, another Dillard's security guard who was employed full time as an officer for the CMPD, took statements from four Dillard's employees, Ms. Withers, Ms. Brown, Mr. Gainsboro, and Mr. Hicklin, about plaintiff's failed transaction. On 12 November 1997, Sergeant Schul met with Assistant District Attorney (ADA) Nathaniel Proctor to present a case against plaintiff. Upon review of the information presented, Mr. Proctor authorized the prosecution of plaintiff for embezzlement. Mr. Proctor did not ask for additional information or investigation. Thereafter, Sergeant Schul obtained a warrant for plaintiff's arrest.

Approximately two weeks after his termination from Dillard's, plaintiff was arrested in the atrium of One First Union Center in Charlotte while on his way to his office. Uniformed police officers, one of whom was Sergeant Wright, handcuffed plaintiff and escorted him outside to a police car. Upon his release from jail, plaintiff returned to First Union to find that his employment was suspended

without pay because of his arrest for embezzlement and that he would be eligible to return to work only if the charges against him were cleared.

Plaintiff was subsequently indicted by the grand jury for embezzlement. Plaintiff was tried for embezzlement in Superior Court, Mecklenburg County. On 27 May 1998, a jury found plaintiff not guilty.

On 4 April 2001, plaintiff initiated this action for malicious prosecution. Following a trial in January 2005, the jury returned a verdict in plaintiff's favor, awarding him $30,000 in compensatory damages and $77,000 in punitive damages for malicious prosecution. On 24 February 2005, the trial court granted Dillard's motion for JNOV as to punitive damages and entered an order setting aside that award. Plaintiff appealed to the Court of Appeals, which remanded the case because, contrary to N.C.G.S. § 1D-50, the trial court's 24 February 2005 order contained no reasons why the trial court set aside the jury verdict as to punitive damages. *Scarborough v. Dillard's, Inc.*, 179 N.C. App. 127, 130, 632 S.E.2d 800, 803 (2006). Upon remand, the trial court filed an order on 8 January 2007 setting out the basis for its judgment notwithstanding the verdict as to punitive damages. Plaintiff appealed from that order on 9 January 2007.

The Court of Appeals reversed the trial court's entry of judgment notwithstanding the verdict as to punitive damages. The Court of Appeals' majority reviewed the issue under the "more than a scintilla of evidence" standard. *Scarborough v. Dillard's Inc.*, 188 N.C. App. 430, 431, 655 S.E.2d 875, 876 (2008). The dissenting judge would have affirmed the trial court as plaintiff failed to present "clear and convincing evidence" of any statutory aggravating factor required for punitive damages. *Id.* at 438, 655 S.E.2d at 881 (Hunter, Robert C., J., dissenting).

Defendant appealed to this Court based on the dissenting opinion in the Court of Appeals. Defendant contends that the Court of Appeals applied an incorrect standard of review and that the evidence was insufficient to support a jury's finding of an aggravating factor. We agree.

[1] This Court has stated that "[t]he test for determining the sufficiency of the evidence when ruling on a motion for judgment notwithstanding the verdict is the same as that applied when ruling on a motion for directed verdict." *Northern Nat'l Life Ins. Co. v. Lacy J. Miller Mach. Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984) (citing

SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

*Summey v. Cauthen*, 283 N.C. 640, 648, 197 S.E.2d 549, 554 (1973)). A motion for judgment notwithstanding the verdict "is essentially a renewal of an earlier motion for directed verdict." *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985) (citation omitted). A motion for directed verdict "tests the legal sufficiency of the evidence to take the case to the jury and support a verdict" for the nonmovant. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E.2d 678, 680 (1977) (citing, *inter alia*, *Investment Props. of Asheville, Inc. v. Allen*, 281 N.C. 174, 188 S.E.2d 441 (1972)).

"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citation omitted). A directed verdict and judgment notwithstanding the verdict are therefore "not properly allowed 'unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to. establish.' " *Manganello*, 291 N.C. at 670, 231 S.E.2d at 680 (quoting *Graham v. North Carolina Butane Gas Co.*, 231 N.C. 680, 683, 58 S.E.2d 757, 760 (1950)).

We must first determine the application of these principles to an award of punitive damages. Our General Assembly has set parameters for the recovery of punitive damages through the enactment of Chapter 1D of the North Carolina General Statutes. To recover punitive damages a claimant must prove

> that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
>
> (1) Fraud.
>
> (2) Malice.
>
> (3) Willful or wanton conduct.

N.C.G.S. § 1D-15(a) (2007). The statute further provides that a claimant "must prove the existence of an aggravating factor by clear and convincing evidence." N.C.G.S. § 1D-15(b) (2007). When punitive damages are sought against a corporation, the claimant must further show that "the officers, directors, or managers of the corporation

## SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C.G.S. § 1D-15(c) (2007).

The clear and convincing standard requires evidence that " 'should fully convince.' " *In re Will of McCauley*, 356 N.C. 91, 101, 565 S.E.2d 88, 95 (2002) (quoting *Williams v. Blue Ridge Bldg. & Loan Ass'n*, 207 N.C. 362, 364, 177 S.E. 176, 177 (1934)). This burden is more exacting than the "preponderance of the evidence" standard generally applied in civil cases, but less than the "beyond a reasonable doubt" standard applied in criminal matters. *Williams*, 207 N.C. at 363-64, 177 S.E. at 177.

Plaintiff argues that whether the evidence is clear and convincing is for the jury to decide; and if there is more than a scintilla of evidence from which the jury could infer the existence of the aggravating factor, the determination should be left to the jury. The plain language of the statute, however, does not support this contention in the context of punitive damages.

The statute provides that a trial court in "upholding or disturbing" an award of punitive damages must "address with specificity the evidence, or lack thereof, as it bears on the liability for or the amount of punitive damages, *in light of the requirements of this Chapter.*" N.C.G.S. § 1D-50 (2007) (emphasis added). This language, coupled with that in N.C.G.S. § 1D-15(b) requiring proof by "clear and convincing evidence," manifests that the General Assembly intended that the quantum of evidence be more than would be sufficient to uphold liability for the underlying tort and that the trial court have a role in ascertaining whether the evidence presented was sufficient to support a jury's finding of the factor under the standard established by the legislature. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 216 (1986) (stating that for purposes of a directed verdict "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case" and that where "clear and convincing" evidence is required, the inquiry is "whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant").

In light of these principles, we hold that in reviewing a trial court's ruling on a motion for judgment notwithstanding the verdict on punitive damages, our appellate courts must determine whether the nonmovant produced clear and convincing evidence from which a jury could reasonably find one or more of the statutory aggravating

SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

factors required by N.C.G.S. § 1D-15(a) and that that aggravating factor was related to the injury for which compensatory damages were awarded. Reviewing the trial court's ruling under the "more than a scintilla of evidence" standard does not give proper deference to the statutory mandate that the aggravating factor be proved by clear and convincing evidence. Evidence that is only more than a scintilla cannot as a matter of law satisfy the nonmoving party's threshold statutory burden of clear and convincing evidence.

[2] Having determined the applicable standard of review, we must now determine whether plaintiff presented clear and convincing evidence from which a jury applying that standard could reasonably find that the officers, directors, or managers of defendant Dillard's participated in or condoned conduct that was (i) malicious or willful or wanton and (ii) was related to the injury for which compensatory damages were awarded.

We initially note that although the dissenting opinion relies on plaintiff's failure to assign error to the trial court's findings of fact, defendant does not raise this issue in its new brief to this Court. Normally, when an appellant fails to assign error to findings of fact by the trial court, the findings are binding on the appellate court, *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citing, *inter alia, Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962)), and the only question is whether the trial court's findings support the conclusions of law, *Quick v. Quick*, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982), which are reviewable de novo. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980) (citing, *inter alia, Food Lion Stores, Inc. v. City of Salisbury*, 300 N.C. 21, 265 S.E.2d 123 (1980)). However, this Court, in reviewing trial court rulings on motions for directed verdict and judgment notwithstanding the verdict, has held that the trial court should not make findings of fact, and if the trial court finds facts, they are not binding on the appellate court. *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, 158-59, 179 S.E.2d 396, 398-99 (1971). Moreover, the language of the statute does not require findings of fact, but rather that the trial court "shall state in a written opinion its reasons for upholding or disturbing the finding or award. In doing so, the court shall address with specificity the evidence, or lack thereof, as it bears on the liability for or the amount of punitive damages." N.C.G.S. § 1D-50. That the trial court utilizes findings to address with specificity the evidence bearing on liability for punitive damages is not improper; the "findings," however, merely provide a convenient format with which all trial

judges are familiar to set out the evidence forming the basis of the judge's opinion. The trial judge does not determine the truth or falsity of the evidence or weigh the evidence, but simply recites the evidence, or lack thereof, forming the basis of the judge's opinion. As such, these findings are not binding on the appellate court even if unchallenged by the appellant. These findings do, however, provide valuable assistance to the appellate court in determining whether as a matter of law the evidence, when considered in the light most favorable to the nonmoving party, is sufficient to be considered by the jury as clear and convincing on the issue of punitive damages.

[3] We next consider defendant's contentions that plaintiff failed to present sufficient evidence of willful or wanton conduct or of malice on the part of defendant to support the jury's award of punitive damages. The General Assembly has defined "willful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence." N.C.G.S. § 1D-5(7) (2007).

Plaintiff relies on two cases in support of his contention that defendant's "superficial and cursory investigation" of the alleged embezzlement evidences "a 'reckless and wanton disregard of [his] rights' ": *Jones v. Gwynne*, 312 N.C. 393, 408-09, 323 S.E.2d 9, 18 (1984), *receded from by Hawkins v. Hawkins*, 331 N.C. 743, 417 S.E.2d 447 (1992), and *Williams v. Boylan-Pearce, Inc.*, 69 N.C. App. 315, 319, 317 S.E.2d 17, 20 (1984), *aff'd per curiam*, 313 N.C. 321, 327 S.E.2d 870 (1985). Plaintiff's reliance on these cases is misplaced as each of them is distinguishable on its facts from the present case.

In *Jones* this Court determined that the evidence was sufficient for submission to the jury on the issue of punitive damages based on the fact that the investigation conducted by defendant Gwynne, the regional security officer for McDonald's Corporation, "was conducted 'in a manner which showed the reckless and wanton disregard of the plaintiff's rights.' " *Jones*, 312 N.C. at 405, 323 S.E.2d at 16. One witness testified that she saw the plaintiff Ray Jones, McDonald's store manager, ring numerous consecutive "no sales" and put the money in the register, yet time cards showed that this particular witness had worked less than half the days she allegedly saw the plaintiff ring the "no sales." *Id.* at 406, 312 S.E.2d at 17. Although Gwynne had reviewed the daily store records, the register journal tapes, the managers' schedules, the crew schedules, and the employee time

SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

cards for the period in question, he failed to make any notations as to when the witness worked and at trial did not know where the time cards could be located. *Id.* Moreover, no evidence was adduced at trial that the McDonald's restaurant showed a shortage of money for any day or that any McDonald's money was ever missing from that store. *Id.* Gwynne never performed an audit of the McDonald's nor did he order that an audit of the store's records be performed. *Id.* at 406-07, 323 S.E.2d at 17. After Gwynne discussed the case with two of his superiors, he talked with two detectives, telling them that he thought they had enough evidence to charge the plaintiff with embezzlement. *Id.* at 408, 323 S.E.2d at 18. Gwynne also suggested that one of the detectives discuss the case with an assistant district attorney. *Id.* The ADA advised the detective that although it sounded like a good case, if the detective " 'could get more information as to the actual conversion of the money . . . it certainly would be better.' " *Id.* At the time of the events in question, Gwynne was an employee of McDonald's Corporation and was not a sworn law enforcement officer, although he had previously been an SBI agent and a Chief Deputy Sheriff. *Id.* at 406, 323 S.E.2d at 16. By contrast, in the instant case the undisputed evidence is that the investigation was handled by Sergeants Wright and Schul acting in their capacity as CMPD officers. ADA Proctor did not ask for any additional investigation or information when presented with the case. Most importantly, the evidence was undisputed that plaintiff voided the sales transaction and permitted the two customers to leave the store with two pairs of shoes for which no payment had been received.

In *Williams* the plaintiff, a part-time employee during the Christmas season, was working in the jewelry department at the defendant department store. 69 N.C. App. at 316, 317 S.E.2d at 18. The sales people were permitted to model the jewelry to encourage customers to purchase it. *Id.* One evening at closing, after rushing to get the 14 karat gold jewelry into the safe and to leave before the lights were turned off, the plaintiff walked out of the store without removing a pair of earrings she had been wearing during the day. *Id.* She was seized by J.M. Lynch, an off-duty police officer hired to provide store security, and was taken back into the store. *Id.* She was ushered into a small room and questioned by three employees about an alleged theft of earrings. *Id.* at 316-17, 317 S.E.2d at 18. The plaintiff offered to return the earrings she had been wearing during the day, but Lynch continued to look for other earrings by examining the contents of the plaintiff's purse without her consent. *Id.* at 317, 317 S.E.2d at 18. Lynch later testified that he did not stop the plaintiff

because she was wearing the store earrings out of the store, but because he thought she had taken other earrings earlier when he saw her bend down and do something under the counter. *Id.* When Lynch's search of the plaintiff's purse revealed only the plaintiff's own earrings, Karen Beasley, head of the defendant's security force, subjected the plaintiff to a body search. *Id.* at 317, 317 S.E.2d at 19. The plaintiff's requests to call her father were refused until after the search failed to reveal any evidence of stolen property. *Id.*

Lynch had the plaintiff transported to the magistrate's office, where he attempted to have her charged with felonious larceny. *Id.* The magistrate would only issue a warrant for misdemeanor larceny of two pairs of earrings. *Id.* The plaintiff was found not guilty of these charges in District Court. *Id.* On this evidence the Court of Appeals concluded that the jury could find that the plaintiff "was treated rudely and oppressively." *Id.* at 320, 317 S.E.2d at 20. The Court of Appeals also concluded that the evidence of Lynch's failure to take an inventory to determine if jewelry was missing, his failure to check the plaintiff's sales book to determine if she had made any sales, and his failure to check with anyone regarding the plaintiff's personnel record or her character constituted evidence from which the jury could find reckless and wanton disregard of the plaintiff's rights. *Id.* at 320, 317 S.E.2d at 20-21.

Again, in the instant case the evidence is undisputed that plaintiff failed to ring the sale and permitted the customers to leave the store with two pairs of shoes for which payment had not been tendered. The evidence is undisputed that Sergeant Schul presented the results of the investigation to an ADA before obtaining a warrant from the magistrate.

Nevertheless, plaintiff argues that as in *Jones* and *Williams*, defendant acted willfully and wantonly in reckless disregard of his rights in its investigation of the incident by failing to inquire into his character and employment records, as well as failing to obtain statements from all possible witnesses, including Betty Jordan, one of the two women who received the shoes. Plaintiff further argues defendant did not divulge exculpatory evidence to the police.

We find these arguments unpersuasive in light of the investigation conducted by Sergeants Wright and Schul before the case was submitted to ADA Proctor. Plaintiff was interviewed by Sergeant Wright, Mr. Hicklin, and Mr. McCluskey the day after the incident and before he was fired. Sergeant Wright took a written statement from

plaintiff during this meeting. The officers took statements from plaintiff's coworkers, Ms. Brown and Ms. Withers, as well as from his supervisors Mr. Gainsboro and Mr. McCluskey. Ms. Withers's statement expressed her belief that plaintiff had given the shoes to the women on purpose, even though Gainsboro thought plaintiff had made a mistake. However, Mr. Gainsboro's statement does not reflect that he thought plaintiff had made a mistake. The relevance of this allegedly exculpatory evidence involving Mr. Gainsboro's opinion about whether plaintiff made a mistake or acted intentionally is problematic at best. In *Jones* the undiscovered or undisclosed exculpatory evidence was presented by the plaintiff at trial and demonstrated that had the investigator discovered this evidence, the defendant would have known that no money was missing from McDonald's. In this case Mr. Gainsboro's initial opinion that plaintiff made a mistake has no bearing on the existence of missing property or goods. Further, though the record does not disclose why Mr. Gainsboro's statement fails to mention his initial opinion or impression, Mr. Gainsboro would have been entitled to change his opinion. Moreover, that Mr. Gainsboro initially thought plaintiff made a mistake was disclosed through Ms. Withers's statement. Certainly this omission does not rise to the level of clear and convincing evidence of willful or wanton reckless disregard of plaintiff's rights in conducting the investigation. Although defendant's investigation may not have been perfect and could perhaps have included statements from additional witnesses, unlike in *Jones* and *Williams*, plaintiff has not adduced any evidence that this additional investigation that plaintiff thinks could have been conducted would have changed the officers' decision to present the case to the ADA. We simply do not know what any additional investigation would have revealed. Speculation is not probative evidence of willful or wanton conduct.

[4] Plaintiff next contends that defendant acted with a conscious and intentional disregard of his rights in procuring his prosecution knowing that it would cause him to lose his full-time job at First Union Bank despite evidence showing that he simply made a mistake in forgetting to charge the women for the shoes. Plaintiff testified that during the meeting the day after the incident occurred, Mr. McCluskey repeatedly accused him of knowing the two women and threatened to "mess up" his job at First Union if he did not tell Dillard's who the women were. Plaintiff testified that he told Mr. McCluskey that he did not know the women and that he would take a polygraph test to clear his name. At the time of the meeting, Dillard's was in possession of the piece of paper with the name

"Betty Jordan" on it, which had been placed by plaintiff on the box of shoes that he had put on hold for one of the women who was supposed to return the next day to purchase the shoes.

While plaintiff's characterization of Mr. McCluskey's statements reveals that Mr. McCluskey may have been somewhat intemperate in his interview with plaintiff, interviews such as this one are always stressful. The pertinent question is whether, under the circumstances, Mr. McCluskey's statements to plaintiff that he was suspected of embezzlement and that if he were charged with embezzlement, it would adversely affect plaintiff's position at First Union Bank constitutes evidence of reckless disregard for plaintiff's rights, or whether Mr. McCluskey simply confronted plaintiff with the truth. That being charged with embezzlement would affect a person's job with a bank is indisputable. The underlying premise of plaintiff's argument is that Mr. McCluskey acted inappropriately by not merely accepting plaintiff's explanation that he made a mistake by forgetting to re-ring the sale. Department store managers have an obligation to protect the safety and security of people and property within the store. Common sense dictates that a store manager cannot be precluded from taking investigative measures necessary to fulfill this obligation when confronted with the information Mr. McCluskey had in this instance. Refusing to accept an employee's explanation and telling an employee the consequences of the situation do not equate with reckless disregard of an employee's rights.

[5] Plaintiff next argues that he presented sufficient evidence of malice on the part of defendant in procuring his felony prosecution to support the jury's award of punitive damages. In the context of punitive damages, "[m]alice" is defined as "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C.G.S. § 1D-5(5) (2007).

Plaintiff argues that malice can be evidenced by his previous reprimand by Mr. McCluskey for referring a customer to another shoe store. Plaintiff testified that at the beginning of his meeting with management the day after the incident, Mr. McCluskey repeatedly said, "I cannot believe you're [Scarborough] in my office again." Plaintiff also argues that the prosecution was due to Mr. McCluskey's belief that plaintiff was so inept that the women were able to dupe him out of the shoes rather than any honest belief that plaintiff had intentionally given away the shoes. These arguments are too speculative and fall well short of constituting clear and convincing evidence from

**SCARBOROUGH v. DILLARD'S, INC.**

[363 N.C. 715 (2009)]

which a jury could conclude that Mr. McCluskey acted with malice under N.C.G.S. § 1D-15(a).

In conclusion, we hold that the proper standard of review of a trial court's ruling on a motion for judgment notwithstanding the verdict as to punitive damages is whether the nonmovant produced clear and convincing evidence of one of the statutory aggravating factors for punitive damages.

Inasmuch as we have determined that the evidence in this case is not sufficient to support a jury's finding of a statutory aggravating factor by clear and convincing evidence, we do not reach the issues of whether the factor "was related to the injury" or whether one of defendant's "officers, directors, or managers . . . participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C.G.S. § 1D-15(c).

For the forgoing reasons, the decision of the Court of Appeals is reversed.

REVERSED.

Justice TIMMONS-GOODSON dissenting.

The majority conflates the burden of persuasion—the exclusive province of the jury—with the burden of production. In so doing, the majority improperly weighs the evidence and substitutes its own judgment for the jury's. I therefore respectfully dissent. Because plaintiff presented sufficient evidence to support the jury's award of punitive damages, the trial court erred in granting defendant's motion for judgment notwithstanding the verdict.

*I. N.C.G.S. § 1D-15*

Subsections 1D-15(a) and (b) state that:

(a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:

(1) Fraud.

(2) Malice.

(3) Willful or wanton conduct.

(b) The claimant must prove the existence of an aggravating factor by clear and convincing evidence.

N.C.G.S. §§ 1D-15 (a),(b) (2007).

To determine the General Assembly's intent in requiring "clear and convincing" evidence of punitive damages under N.C.G.S. § 1D-15 and whether by establishing such burden of proof, the General Assembly intended to alter the trial court's review of the evidence upon a motion for judgment notwithstanding the verdict, I believe it instructive to closely examine two basic concepts of law: the burden of proof and judgment notwithstanding the verdict.

## II. Burden of Proof

The burden of proof in any case includes both the burden of production and the burden of persuasion. *Black's Law Dictionary* 209 (8th ed. 2004) [hereinafter *Black's*]; *see also* N.C.G.S. § 8C-1, Rule 301 (2007) (distinguishing between the burden of production and the burden of persuasion); *Hunt v. Eure*, 189 N.C. 482, 486, 127 S.E. 593, 594 (1925); *Speas v. Merchs. Bank & Tr. Co.*, 188 N.C. 524, 526, 125 S.E. 398, 399 (1924); 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 30 (6th ed. 2004) [hereinafter Broun]. The burden of production, also known in North Carolina as the "duty of going forward," *Speas*, 188 N.C. at 529, 125 S.E. at 401, is "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a peremptory ruling" such as a directed verdict or a judgment notwithstanding the verdict, *Black's* 209. *See also Speas*, 188 N.C. at 526, 125 S.E. at 399 (contrasting the "burden or duty of going forward and producing evidence" with the party's burden of persuasion); Broun § 30 (same). The burden of persuasion, meanwhile, is the "party's duty to convince the fact-finder to view the facts in a way that favors that party." *Black's* 209; *see also* Broun § 33. The burden of persuasion is commonly known in North Carolina as the "burden of the issue." *Speas*, 188 N.C. at 529, 125 S.E. at 401; *see also Bd. of Educ. v. Makely*, 139 N.C. 54, 57-58, 139 N.C. 30, 35-36, 51 S.E. 784, 786 (1905); Broun §§ 30, 33. The burden of persuasion is also often "loosely termed [the] burden of proof." *Black's* 209 (emphasis omitted); *see also* Broun § 33.

The burden of production and the burden of persuasion are distinct concepts. *See, e.g., Speas*, 188 N.C. at 529, 125 S.E. at 401 ("The burden of the issue and the duty of going forward with evidence are two very different things."); *Makely*, 139 N.C. at 57-58, 139

SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

N.C. at 35-36, 51 S.E. at 786 (distinguishing the burden of production from the burden of proof); *Black's* 209 (same). Significantly, the trial court may review the evidence to ensure that the burden of production is met, while the burden of persuasion rests with the trier of fact:

> "The important practical distinction between these two senses of 'burden of proof,' is this: 'The risk of non[]persuasion operates when the case[s] . . . come into the hands of the jury [] while the duty of producing evidence implies a liability to a ruling [of] the judge disposing of the issue without leaving the question open to the jury's deliberation[].' "

*Hunt*, 189 N.C. at 488, 127 S.E. at 596 (quoting 5 John Henry Wigmore, *Evidence* § 2487 (2d ed. 1923) (alterations in original)); *see also Campbell v. Everhart*, 139 N.C. 395, 405, 139 N.C. 503, 516, 52 S.E. 201, 206 (1905) ("The legal sufficiency of proof and the moral weight of legally sufficient proof are very distinct in the conception of the law. The first lies within the province of the court, the last within that of the jury."); *Black's* 209 (defining the burden of production as the "party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder" rather than by the trial judge, while the burden of persuasion is the "party's duty to convince the fact-finder"); Broun §§ 32, 33, 39.

## A. Varying Levels of the Burden of Persuasion

The burden of persuasion is "heavier or lighter depending upon the kind of case and the particular issue involved." Broun § 33; *see also Speas*, 188 N.C. at 528-29, 125 S.E. at 400-01 (describing the differing levels of the burden of persuasion); *Black's* 209 (identifying varying burdens of persuasion). In civil cases, the burden of persuasion is usually the "greater weight" or "preponderance" of the evidence, *Black's* 209, but other civil cases require a greater burden of persuasion, that of "clear and convincing evidence," *see Speas*, 188 N.C. at 528-29, 125 S.E. at 401, also called the "middle burden of proof," *Black's* 209. *See also* Broun § 42. In criminal cases, the burden of persuasion is almost always "beyond a reasonable doubt." *Speas*, 188 N.C. at 528, 125 S.E. at 400; *Black's* 209. In each case, the jury must determine whether the party with the burden of persuasion has met that burden with evidence that preponderates, clearly convinces, or establishes the matters at issue beyond a reasonable doubt. These various burdens of persuasion relate to the credibility of the evidence offered rather than the quantity of the evidence. *See In re Will of*

SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

*Lomax*, 225 N.C. 592, 595, 35 S.E.2d 876, 878 (1945) (noting that the probative value of testimony offered "is a matter only for the jury").

### B. The "Clear and Convincing" Burden of Persuasion

The majority asserts that, *as a matter of law*, plaintiff failed to present "clear and convincing" evidence in support of his claim for punitive damages. In so concluding, the majority conflates the burden of production with the burden of persuasion. Determining whether a plaintiff has met the burden of persuasion by producing "clear and convincing" evidence is the exclusive province of the fact finder. *See, e.g., In re Will of McCauley*, 356 N.C. 91, 102, 565 S.E.2d 88, 95 (2002) ("Whether the evidence on these questions is clear, strong, and convincing is for the jury to decide."); *Speas*, 188 N.C. at 530, 125 N.C. at 401. This principle is well established. As this Court admonished in *Lehew v. Hewett*, 130 N.C. 15, 16, 130 N.C. 22, 22-23, 40 S.E. 769, 770 (1902):

> The evidence was sufficient to be submitted to the jury, with the instruction that it must be clear, strong and convincing to warrant a verdict for the plaintiff, but whether it was or was not "strong, clear and convincing" was to be determined by the jury and not by the court; otherwise, the jury would be useless.
>
> "The [j]udge has no more right, when the testimony[,] if believed[,] is sufficient to be submitted to the jury, to determine in the trial of civil actions what is strong, clear and convincing proof[,] tha[n] he has in the trial of a criminal action to express an opinion as to whether guilt has been shown beyond a reasonable doubt."

*Id.* (quoting *Cobb v. Edwards*, 117 N.C. 167, 173, 117 N.C. 245, 253, 23 S.E. 241, 244 (1895) (alterations in original)); *see also Lefkowitz v. Silver*, 182 N.C. 361, 372, 182 N.C. 339, 350, 109 S.E. 56, 61 (1921) (noting that it is the role of the jurors to decide if evidence is strong, cogent and convincing, "just as they decide in ordinary civil cases whether the proof of plaintiff preponderates, or in criminal cases whether the State has established the crime beyond a reasonable doubt").

Section 1D-15 of the North Carolina General Statutes, like so many statutes, sets forth both the burden of production and the burden of persuasion. To be awarded punitive damages, the plaintiff must meet his burden of production by producing evi-

**SCARBOROUGH v. DILLARD'S, INC.**

[363 N.C. 715 (2009)]

dence of (1) fraud, (2) malice, or (3) willful or wanton conduct. N.C.G.S. § 1D-15(a). The plaintiff's burden of persuasion is to produce "clear and convincing" evidence of one of these aggravating factors. *Id.* § 1D-15(b). The "clear and convincing" burden of persuasion required by N.C.G.S. § 1D-15(b) is neither novel nor unique in our statutory scheme and case law. Our statutes require varying burdens of persuasion—from preponderance of the evidence, to clear and convincing, to beyond a reasonable doubt. *See, e.g.*, N.C.G.S. §§ 7B-805 (2007) (requiring clear and convincing evidence); 7B-2409 (2007) (requiring proof beyond a reasonable doubt); 42-30 (2007) (requiring preponderance of the evidence). The majority concludes that because the burden of persuasion set forth in N.C.G.S. § 1D-15 is "clear and convincing," the trial court must, upon a motion for directed verdict or judgment notwithstanding the verdict, review and determine whether the evidence is clear and convincing. Yet as explained above, the burden of persuasion lies within the province of the jury. *See Martin v. Underhill*, 265 N.C. 669, 675, 144 S.E.2d 872, 876 (1965) (stating that when the required burden of persuasion is clear, cogent, and convincing evidence, "whether the evidence has that convincing quality is a question for the jury upon proper instructions from the court" but "the rule as to the sufficiency of the proof to withstand a motion for judgment of nonsuit [is] the same as in other cases" (citations omitted)). I do not believe, and the majority offers no compelling argument otherwise, that the General Assembly intended to overturn this settled principle of law by merely requiring a heightened burden of persuasion in order to recover punitive damages under N.C.G.S. § 1D-15.

### III. Judgment Notwithstanding the Verdict

"A motion for judgment notwithstanding the verdict . . . is essentially a renewal of an earlier motion for a directed verdict." *Taylor v. Walker*, 320 N.C. 729, 733, 360 S.E.2d 796, 799 (1987) (citation omitted). It requires the trial court to assess whether the burden of production has been met by evidence that is "legally sufficient to take the case to the jury." *Id.* (citations omitted). It is well established that "[t]he party moving for judgment notwithstanding the verdict, like the party seeking a directed verdict, bears a heavy burden under North Carolina law." *Id.* "In ruling on the motion, the trial court must consider the evidence in the light most favorable to the non-moving party, giving him the benefit of all reasonable inferences to be drawn therefrom and resolving all conflicts in the evidence in his favor." 320 N.C. at 733-34, 360 S.E.2d at 799 (citing, *inter alia, Smith v. Price*,

315 N.C. 523, 340 S.E.2d 408 (1986)). Judgment notwithstanding the verdict may not be granted "unless it appears *as a matter of law* that a recovery simply cannot be had by plaintiff upon *any view of the facts* which the evidence reasonably tends to establish." *Id.* (emphases added) (citing *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977)).

Contrary to the majority's assertions, the trial court does not alter its review of the plaintiff's *burden of production* upon a motion for judgment notwithstanding the verdict merely because the *burden of persuasion* is higher or lower in each case. As long as the plaintiff has met his burden of production and the facts in evidence establish a prima facie case, the case belongs with the jury. *See, e.g., Millers Mut. Ins. Ass'n v. Atkinson Motors Inc.*, 240 N.C. 183, 187, 81 S.E.2d 416, 420 (1954); *Campbell*, 139 N.C. at 405, 139 N.C. at 516-17, 52 S.E. at 206 (noting that "the province of the jury should not be invaded in any case" and that when reasonable minds "might reach different conclusions, the evidence must be submitted to the jury" (citations omitted)). The trial court then instructs the jury on, *inter alia*, the plaintiff's burden of persuasion, and it is "for the jury to say, upon the facts and the circumstances shown by [the] plaintiff's evidence" whether the plaintiff has established his claim. *Millers Mut. Ins.*, 240 N.C. at 187, 81 S.E.2d at 419-20.

Here, the trial court instructed the jury regarding plaintiff's "clear and convincing" burden of persuasion on his claim for punitive damages. "This Court presumes that jurors follow the trial court's instructions." *State v. Cummings*, 352 N.C. 600, 623, 536 S.E.2d 36, 53 (2000), *cert. denied*, 532 U.S. 997 (2001). The jury applied the clear and convincing burden of persuasion to plaintiff's evidence and found that punitive damages were warranted. The jury in its discretion, therefore, awarded plaintiff punitive damages. *See Watson v. Dixon*, 352 N.C. 343, 348, 532 S.E.2d 175, 178 (2000). This Court will not set aside the jury's determination unless only a single inference, unfavorable to the plaintiff, is possible from the evidence:

Taking the case away from the jury, while a duty sometimes unavoidable, is always a delicate task, involving much more than a strong feeling that the plaintiff ought not to recover. The power of the court is *limited to the ascertainment whether there is any evidence at all which has probative value in any or all of the facts and circumstances offered in the guise of proof*. It is not a matter of passing upon the weight of evidence when it has

weight. *That power is denied us.* It is a matter of dropping the proffered proof into evenly poised balances to see whether it weighs against nothing.

*Wall v. Bain,* 222 N.C. 375, 378, 23 S.E.2d 330, 332-33 (1942) (emphases added) (citations omitted).

### IV. Evidence Presented

In the present case, I conclude that plaintiff met his burden of production. Taken in the light most favorable to the nonmovant, the evidence shows that plaintiff, a forty-one year old African-American man, was terminated from his employment as a part-time shoe salesman at Dillard's after mistakenly allowing two African-American women to leave the store with two pairs of shoes for which they did not pay. When plaintiff realized his mistake, his "hands start[ed] shaking" and he uttered an expletive. Plaintiff immediately reported his mistake to the manager on duty, Steven Gainsboro. Gainsboro took no action to recover the shoes, but merely checked the register tape. Gainsboro believed that plaintiff's actions were inadvertent rather than intentional. Gainsboro told plaintiff he would speak to his supervisor, shoe department manager David Hicklin, the following day. Although other Dillard's shoe department employees later observed the two women carrying the bag with the shoes, no steps were taken to approach or apprehend the women.

The next day, plaintiff telephoned Hicklin three times to explain what had happened. When plaintiff finally reached him, Hicklin told plaintiff he didn't "know what [plaintiff was] talking about" but that they would talk when plaintiff came to work that evening. When plaintiff arrived at Dillard's that evening, Hicklin summoned him to the manager's office, where he waited outside for approximately fifteen minutes. Once plaintiff was allowed to enter the office, he was interviewed by Hicklin, store manager Kevin McCluskey, and Officer Cullen Wright of the Mecklenburg Police Department. McCluskey immediately told plaintiff, "I cannot believe you're in my office again." McCluskey had formally reprimanded plaintiff the previous week for referring a customer to another store when Dillard's did not carry the type of shoe the customer desired to purchase.

The "drain[ing]" interview lasted at least two hours, during which the three men repeatedly accused plaintiff of being acquainted with the women and intentionally allowing them to leave with the shoes. McCluskey threatened to charge plaintiff with embezzlement and

SCARBOROUGH v. DILLARD'S, INC.

[363 N.C. 715 (2009)]

"mess up" his job at First Union if he did not reveal the names of the two women. Plaintiff repeatedly explained that he had made a mistake, took responsibility for the incident, and offered to pay for the shoes and to submit to a polygraph examination. At the end of the interview, McCluskey terminated plaintiff's employment at Dillard's and banned him from entering any Dillard's store. Plaintiff was "very upset" and "very surprised" by the interview. Dillard's referred the matter to Officer Wright and Officer Ken Schul, another Mecklenburg Police Department officer who also worked at Dillard's, for prosecution. Officer Wright later arrested plaintiff at his place of employment with First Union on charges of embezzlement. First Union subsequently suspended plaintiff without pay because of his arrest for embezzlement.

### V. Punitive Damages Based on Malicious Prosecution

In establishing his malicious prosecution claim, plaintiff here was required to prove that defendant (1) initiated the earlier proceeding, (2) with malice and (3) without probable cause, and (4) that the earlier proceeding terminated in his favor. *Jones v. Gwynne*, 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984) (quoting *Stanback v. Stanback*, 297 N.C. 181, 202, 254 S.E.2d 611, 625 (1979)). The jury found defendant liable for malicious prosecution of plaintiff and—as the majority acknowledges—the validity of that verdict stands. Thus it is uncontroverted that at least the greater weight of the evidence showed that defendant acted with malice.

The majority appears to concede that plaintiff presented evidence of the aggravating factor of malice, but concludes that the evidence falls short of the "clear and convincing" standard required by N.C.G.S. § 1D-15. Again, however, whether evidence is clear and convincing is a matter for the trier of fact. The majority's efforts to rationalize and explain the actions of various persons and events illuminate the difficulty of reviewing a cold record and attempting to assess whether evidence is clear and convincing. For example, the majority characterizes McCluskey's threat to plaintiff to "mess up" his job at First Union if he did not reveal the names of the women who took the shoes—even though McCluskey possessed the name of one of the women, whom he did not bother to investigate—as "somewhat intemperate" and "simply confronting plaintiff with the truth." This is indeed one possible inference from the evidence presented. An equally plausible view of the evidence presented is that McCluskey had no intention of conducting a genuine investigation of the incident, that instead, he personally disliked plaintiff and believed him to

be an incompetent employee, and that he therefore seized upon plaintiff's mistake in order to terminate his employment with Dillard's and advance his termination at First Union. Such a view is imminently reasonable given the evidence of the pre-existing ill will McCluskey demonstrated towards plaintiff, plaintiff's lack of involvement in the theft, the interrogation-style interview McCluskey conducted, McCluskey's threat to "mess up" plaintiff's job at First Union, and the fact that no one at Dillard's appeared to be at all interested in locating the two women or recovering the merchandise. The jury may have also drawn conclusions from the fact that none of plaintiff's supervisors at Dillard's—Gainsboro, Hicklin, or McCluskey—testified at trial.

In *Jones* this Court held that the Court of Appeals erred in concluding that the plaintiff's evidence was insufficient to justify submission of the issue of punitive damages to the jury based on malicious prosecution when there was evidence from which a reasonable juror could conclude that defendant's investigation of the plaintiff was conducted with reckless and wanton disregard of the plaintiff's rights. 312 N.C. at 408-09, 323 S.E.2d at 18. In that case the evidence tended to show that the defendant conducted only "a superficial and cursory investigation" of the plaintiff employee before soliciting his prosecution for alleged embezzlement. *Id*; *see also Williams v. Boylan-Pearce, Inc.*, 69 N.C. App. 315, 319-20, 317 S.E.2d 17, 20-21 (1984) (holding the trial court erred in failing to submit the issue of punitive damages to the jury when there was evidence from which the jury could find that the defendant maliciously prosecuted the plaintiff in a manner evincing a "reckless and wanton disregard of her rights"), *aff'd per curiam*, 313 N.C. 321, 327 S.E.2d 870 (1985). The majority contends *Jones* and *Williams* are factually distinguishable and therefore, inapplicable. Cases may always be distinguished on their facts, however. Whether cases may be *meaningfully* distinguished is the pertinent question. That the majority dedicates nearly half of its opinion to discussing the facts of the instant case and attempting to distinguish them from the facts of *Jones* and *Williams* speaks volumes.

## VI. *Conclusion*

Taken in the light most favorable to plaintiff, I conclude that plaintiff met his burden of production by presenting evidence from which a reasonable juror could conclude that defendant acted with malice and with reckless and wanton disregard for plaintiff's rights. Given the various possible interpretations of the evidence, judgment notwithstanding the verdict was improper. *Taylor*, 320 N.C. at 733-34,

360 S.E.2d at 799. It was the jury's role to sift through the evidence, evaluate the demeanor and credibility of the witnesses, and determine whether plaintiff met his burden of persuasion by producing clear and convincing evidence in support of his claim for punitive damages. The jury did so and found in favor of plaintiff. The majority's decision usurps the jury's role and imposes its own view of the evidence, contrary to well-established case law. I respectfully dissent.

Justice HUDSON joins in this dissenting opinion.