HUNTER, JR., Robert N., Judge.
Respondent, the father of the juvenile H.S. ("Holly")[1] , appeals from orders ceasing reunification efforts and appointing a guardian for the juvenile. After careful review, we affirm.
I. Facts and Background
On 13 December 2013, the Bladen County Department of Social Services ("DSS") filed a petition alleging Holly to be neglected and dependent. In the petition, DSS reported Holly's parents were incarcerated. Respondent was arrested on 10 December 2013 for a probation violation, and was due to be released on 9 January 2014. Holly's mother was arrested on 11 December 2013, also for a probation violation, and was due to be released 10 January 2013. Prior to her mother's arrest, Holly resided with her mother, but the family was "basically homeless." DSS alleged Holly's mother used drugs and stayed in a home known for drug related activity. The social worker who investigated the family found limited food in the home. Holly was dirty and infested with lice. Holly's older brothers, W.H. and D.N. ("Wayne" and "David")[2] were "out at all times of the night without proper clothing" and were not regularly attending school.
On 13 December 2013, the Bladen County District Court granted DSS non-secure custody of Holly. The court appointed a guardian ad litem for Holly on 6 February 2014. On 26 March 2014, based on stipulations made by the parties, the court adjudicated Holly as a dependent juvenile. Upon his release from jail, the court ordered Respondent to submit to a substance abuse assessment and follow any recommended treatment.
The court held a review hearing on 22 July 2014, and filed its order on 11 August 2014. The court found Respondent and Holly's mother resided together at Respondent's home, and Respondent successfully completed his substance abuse assessment without a recommendation for further treatment. The court placed Holly in Respondent's home for a trial home visit.
The court held another review hearing on 28 October 2014. In the subsequent order, filed 26 November 2014, the court noted Wayne and David lived with Respondent and the mother. Prior to the hearing, Wayne was placed on supervised juvenile probation resulting from his theft of a golf cart, and was required to observe curfew. On 7 October 2014, both Wayne and David stayed out past their curfew. Their mother could not locate them. Law enforcement agents eventually located the siblings and returned them to Respondent's home. In addition to the mother's difficulties in supervising Wayne and David, the court noted the home suffered from an infestation of bed bugs, which was "successfully addressed" by Holly's parents. Based on the insect infestation and the 7 October 2014 incident, the court removed Wayne, David, and Holly from the home. Respondent and Holly's mother were granted visitation with Holly. However, because Respondent worked out of town six days a week, the court ordered Holly could visit overnight only when Respondent was home.
The court held its next review hearing held on 4 December 2014 and filed its order on 31 December 2014. In its order, the trial court found Respondent and Holly's mother resided together along with Holly. The court noted Holly received individual therapy, but Respondent failed to transport her to her two most recent scheduled visits. The court ordered Respondent to ensure Holly attended every mental health appointment and to help her comply with any recommendations from the therapist.
The court held another review hearing on 5 March 2015 and filed its order on 26 March 2015. The court found Wayne, who was on probation for an earlier offense, had stolen his social worker's wallet and attempted to cash a check. He subsequently fled from DSS. Further, the court found there was "significant urgency" to locate Wayne due to previous medical tests which indicated he was suffering from a liver abnormality that required attention. Although Holly's mother denied he was there and Respondent "did not clarify the issue," DSS discovered Wayne at Respondent's home. The trial court found Respondent was complicit in concealing Wayne's presence from DSS.
The court found Holly's mother gave birth to another child on 3 February 2015. Holly's mother denied being pregnant under oath at a previous hearing. Moreover, the court found she had no prenatal care and continued to use methadone during the pregnancy. Holly's mother left Respondent's home on 27 December 2014 and returned on or about 19 February 2015 without inquiry from Respondent. Based on the "unstable" residential relationship between Respondent and Holly's mother and Respondent's role in concealing Wayne's presence in his home, the court concluded further reunification efforts between Respondent and Holly were futile. Accordingly, the court ceased reunification efforts and changed the permanent plan for Holly to custodianship or guardianship with a court approved caregiver.
On 10 October 2015, Holly's mother passed away. The court held a permanency planning review hearing on 2 November 2015 and entered its order on 21 January 2016. The court found Respondent scheduled a home inspection with DSS on 28 October 2015 at 2:00 p.m. Despite setting the time and date himself, Respondent was asleep when social workers arrived to examine the home. The home was unclean and Respondent had not made any improvements to the home. The bedroom proposed for Holly was used as a storage facility for other furniture. The court found Respondent's home was "disheveled," and neither "presentable or functional for keeping [Holly]."
Because necessary improvements and remedies to the home had been left uncompleted for months, and because Respondent failed to address these issues within a reasonable time, the court concluded keeping an appropriate household was not one of Respondent's priorities. As a result, the court found the "continued instability of [Respondent's] home and child-care arrangements constitute actions inconsistent with and a waiver of his constitutionally protected status as a parent to [Holly]." The court determined the permanent plan for the juvenile should be adoption, along with custodianship or guardianship. Respondent filed a motion to reconsider the order on 17 November 2015. The trial court denied the motion in open court on 10 December 2015.
On 3 February 2016, the court held a permanency planning review hearing and issued its order on 7 April 2016. In the order, the court referenced its prior finding Respondent had waived his constitutionally protected status as a parent, and incorporated the findings from the 21 January 2016 order by reference. The court found Holly's foster mother ("Mrs. W.") did not work outside the home, and was available to care for Holly, as well as her own two children, on a continuous basis. The court found the foster parents ("Mr. and Mrs. W.") possessed adequate financial means to provide care and sustenance for Holly. Finally, the court explained the requirements of guardianship to Mr. and Mrs. W., and found they understood and were willing to accept the guardian relationship. The court then awarded guardianship of Holly to Mr. and Mrs. W. On 6 May 2016, Respondent filed his notice of appeal from the 7 April 2016 order awarding guardianship.
II. Jurisdiction
On 31 August 2016, Respondent filed a petition for writ of certiorari with this Court. Respondent seeks review of the 26 March 2015 order ceasing reunification efforts, as well as the 21 January 2016 permanency planning review order in which the court found he had acted inconsistently with his constitutionally protected parental status. Respondent contends he lost his right to appeal the order ceasing reunification efforts by failing to give timely notice of appeal. See N.C. Gen. Stat. § 7B-1001(b) (2015). Although Respondent has lost his right to appeal, this Court may, in its discretion, issue a writ of certiorari "when the right to prosecute an appeal has been lost by failure to take timely action." N.C. R. App. P. 21(a)(1) (2016). In our discretion, we grant Respondent's petition for writ of certiorari for the purpose of considering his contentions regarding the 26 March 2015 order ceasing reunification efforts.
Regarding the 21 January 2016 order, N.C. Gen. Stat. § 1-278 (2015) provides: "Upon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment." In Tinajero , this Court stated:
even when a notice of appeal fails to reference an interlocutory order, in violation of Rule 3(d), appellate review of that order pursuant to N.C. Gen. Stat. § 1-278 is proper under the following circumstances: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment. All three conditions must be met.
Tinajero v. Balfour Beatty Infrastructure, Inc. , 233 N.C. App. 748, 757, 758 S.E.2d 169, 175 (2014) (internal citations omitted).
Here, all three conditions are met. First, Respondent filed a motion for reconsideration of the order on 17 November 2015. Second, the order was interlocutory because it did not dispose entirely of the case. See Veazey v. City of Durham , 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."). Third, because the findings entered in the order were specifically incorporated by reference in the order awarding guardianship, the order "necessarily affected the judgment." Tinajero , 233 N.C. App. at 757, 758 S.E.2d at 175. Therefore, although Respondent's notice of appeal does not specifically designate the 21 January 2016 order, this Court has jurisdiction to consider Respondent's arguments, and it is unnecessary for us to consider his petition for writ of certiorari in relation to that order.
With respect to the 7 April 2016 guardianship order, jurisdiction is proper in this Court pursuant to N.C. Gen. Stat. § 7B-1001(a) (2015).
III. Standards of Review
"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M. , 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007).
The United States Constitution's Due Process Clause protects a parent's "paramount constitutional right to custody and control of his or her children." Adams v. Tessener , 354 N.C. 57, 62, 550 S.E.2d 499, 503 (2001). The government may take a child away from her natural parent only upon a showing that "the parent is unfit to have custody ... or where the parent's conduct is inconsistent with his or her constitutionally protected status [.]" Id. (citations omitted). The trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be based on clear and convincing evidence. Id. at 63, 550 S.E.2d at 503 (citing Santosky v. Kramer , 455 U.S. 745, 747-48, 102 S. Ct. 1388, 71 L.Ed. 2d 599, 603 (1982) ). Clear and convincing evidence "requires evidence that should fully convince." Scarborough v. Dillard's, Inc. , 363 N.C. 715, 721, 693 S.E.2d 640, 643 (2009) (internal citation and quotation marks omitted). We review to determine "whether the evidence presented is such that a [fact-finder] applying that evidentiary standard could reasonably find" the fact in question. Id. at 721, 693 S.E.2d at 644 (internal quotation marks omitted).
Pursuant to N.C. Gen. Stat. § 7B-906.1(g), at the conclusion of a permanency planning hearing, "the judge shall make specific findings as to the best permanent plans to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(g) (2015). "[W]hen the court finds it would be in the best interests of the juvenile, the court may appoint a guardian of the person for the juvenile." N.C. Gen. Stat. § 7B-600(a) (2015). "We review a trial court's determination as to the best interest of the child for an abuse of discretion." In re D.S.A. , 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007).
IV. Analysis
A. Order Ceasing Reunification Efforts
Respondent first argues the trial court erred by ceasing reunification efforts. We disagree.
Here, in its 21 January 2016 order, the trial court made the following findings of fact:
7. That [Wayne] had been placed in a therapeutic foster home, which was disrupted and he was then placed in another foster home on January 23, 2015.
8. That [Wayne] was placed on supervised juvenile probation for an offense of larceny and possession of a deadly weapon.
9. That on that day [Wayne] stole Social Worker Brittany Preston's wallet and attempted to cash a check.
10. That [Wayne] was taken into the custody of law enforcement officers and was taken to the home of the mother... and [Respondent], from which he fled and his whereabouts were unknown to [DSS] until February 20, 2015, at which time he was located at the home of [Respondent and the mother], at approximately 10:30 PM.
11. That at approximately 8:30 AM [DSS] received information that [Wayne] was in fact at that home of [the mother and Respondent], and members of [DSS] arrived at the home and inquired from [the mother] as to whether [Wayne] was in the home, in the presence of [Respondent,] and [the mother] denied his presence there and [Respondent] did not clarify the issue at that time.
12. That the court does not find [Respondent's] explanation of his failure to disclose [Wayne's presence] credible.
....
14. That there was a significant urgency to have [Wayne] in the physical custody of [DSS], due to previous tests and medical examinations finding that he was suffering from a liver abnormality that required attention.
15. That when the juvenile was taken into custody on February 20, 2015, he tested positive for marijuana and benzodiazepine, and subsequent[ly] admitted to smoking and taking [X]anax while on the run.
....
28. That the court finds that [Respondent's] failure to disclose [Wayne's] presence in his home minutes before [DSS] appeared on February 20, 2015, leaves the court to conclude that he was [in] contempt on supporting [the mother's] misrepresentation to [DSS] and was equally implicit [sic].
The court further found Holly's mother was pregnant, and gave birth to a child on 3 February 2015. Regarding this pregnancy, the court found Holly's mother endangered the unborn child by using methadone and failing to obtain prenatal care. The court additionally found:
20. That [the mother] was residing at the home of [Respondent] through December 27, 2014, when she left and did not returned [sic] until on or about February 19, 2015.
21. That [Respondent] did not ask [the mother] why she left, nor did he inquire why she returned to his home.
22. That the residential relationship between [the mother and Respondent] appears to be unstable to the court and [Respondent] appears to tolerate [the mother's] coming and going without explanation and accepts it as simply [a] matter of course.
Respondent does not challenge the court's findings, and thus they are deemed supported by competent evidence and are binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
The purpose of a permanency planning hearing is to develop a plan "to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(g) (2015). To achieve this goal, a trial court may order DSS to cease reunification efforts with a parent pursuant to N.C. Gen. Stat. § 7B-507(b). This statute states:
(b) In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]
N.C. Gen. Stat. § 7B-507(b) (2013).[3]
Here, the evidence, as well as the trial court's unchallenged findings of fact, demonstrate: (1) Respondent endangered the life and welfare of another child by concealing the child's whereabouts from DSS; and (2) maintained an unstable relationship with Holly's mother who was, at the time, pregnant and abusing drugs. The evidence and findings support the trial court's ultimate finding that further reunification efforts would be futile and inconsistent with Holly's health, safety, welfare, and need for a safe permanent home. Accordingly, we conclude the trial court did not err by ceasing reunification efforts.
B. Respondent's Constitutionally Protected Status
Respondent next argues the trial court erred when it found he had acted inconsistently with his constitutionally protected parental rights. We disagree.
"A parent has an interest in the companionship, custody, care, and control of [his or her children that] is protected by the United States Constitution." Boseman v. Jarrell , 364 N.C. 537, 549, 70 S.E.2d 494, 502 (2010). Prior to granting guardianship of a child to a nonparent, a district court must "clearly address whether [the] respondent is unfit as a parent or if [his] conduct has been inconsistent with [his] constitutionally protected status as a parent [.]" In re P.A. , --- N.C. App. ----, ----, 772 S.E.2d 240, 249 (2015). "[P]arents have a constitutionally protected right to the custody, care and control of their child, absent a showing of unfitness to care for the child." In re A.C. , --- N.C. App. ----, ---- 786 S.E.2d 728, 735 (2016) (citation and internal quotation marks omitted).
"[A] parent may lose the constitutionally protected paramount right to child custody if the parent's conduct is inconsistent with this presumption or if the parent fails to shoulder the responsibilities that are attendant to rearing a child." Cantrell v. Wishon , 141 N.C. App. 340, 342, 540 S.E.2d 804, 806 (2000). While "unfitness, neglect, and abandonment" clearly constitute conduct inconsistent with the parent's protected status, "[o]ther types of conduct, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents." Price v. Howard , 346 N.C. 68, 79, 484 S.E.2d 528, 534-35 (1997) This Court has stated:
[T]here is no bright line beyond which a parent's conduct amounts to action inconsistent with the parent's constitutionally protected paramount status. Our Supreme Court has emphasized the fact-sensitive nature of the inquiry, as well as the need to examine each parent's circumstances on a case-by-case basis.... The court must consider both the legal parent's conduct and his or her intentions vis-à -vis the child.
A.C. , --- N.C. App. at ----, 786 S.E.2d at 735 (internal citations and quotation marks omitted).
Here, the trial court made the following findings of fact regarding Respondent's conduct, which it later incorporated by reference when granting guardianship of Holly to her foster parents:
30. That [Respondent] scheduled a home inspection of his home with [DSS] on October 28, 2015 at 2:00 p.m. and that when [the social worker] arrived at the appointed day and hour, that [Respondent] was asleep and the home was disheveled and neither of the proposed bedrooms ... were in any shape to be occupied.
31. That [Holly's] bedroom was being used as a storage facility for beds, tables, chairs and that the home did not appear to be presentable or functional for keeping a five year old[.]
32. That subsequent[ly] [Respondent] has made changes to the home and picked up things.
33. That [Respondent] does not drive and has lost his NC driver['s] license as the result of a conviction and there is no specific date for him to recover his driving privileges.
34. That visitation with [Holly] has been problematic for him as he testified he would have to walk twenty four miles to visit with his children and as a result of that inconvenience [DSS] accommodated him for a more proximate visitation location.
35. That [Respondent] is not presently employed but that when he does work he tends to work out of town for weeks at a time.
36. That [Respondent] is not making adequate progress within a reasonable period of time under the plan.
37. That [Respondent] is staying in touch with DSS and that he remains available to the Court but that his behavior is not consistent with the health and safety of his ... children.
38. That [Respondent] has made sporadic and inconsistent attempts to provide appropriate housing and stability for his children; that some of the repairs and improvements he made [to his home] were completed in only a matter of hours and days, when he neglected the same for months prior thereto, leading the court to believe and find that these improvements were not a priority and that [Respondent] failed to act appropriately within a reasonable time to eliminate the issues that led to [Holly remaining] outside the home. That [Respondent's] failure to address these issues within a reasonable time, and the continued instability of his home and child-care arrangements constitute actions inconsistent with and a waiver of his constitutionally protected status as a parent to [Holly]....
The evidence before the trial court established that almost two years after Holly's removal, Respondent was no closer to establishing a stable, suitable home for Holly, and it did not appear that providing care for Holly was a priority for him. See Price , 346 N.C. at 79, 484 S.E.2d at 534-35 ("Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy."). Accordingly, we hold the trial court did not err in finding Respondent had acted inconsistently with his constitutionally protected parental rights.
C. Guardianship Order
Finally, Respondent argues the trial court failed to verify whether both of Holly's guardians, Mr. and Mrs. W., understood and accepted the responsibilities of guardianship. See N.C. Gen. Stat. § 7B-906.1(j) (2015) and N.C. Gen. Stat. § 7B-600(c) (2015). We disagree.
N.C. Gen. Stat. § 7B-600(c) requires the trial court to "verify that the person being appointed as guardian of the juvenile ... will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. § 7B-600(c) ; see also N.C. Gen. Stat. § 7B-906.1(j) (appointment of a guardian at a permanency planning review hearing). This Court has previously held the trial court is not required to "make any specific findings in order to make the verification." In re J.E., B.E. , 182 N.C. App. 612, 616-17, 643 S.E.2d 70, 73, disc. review denied , 361 N.C. 427, 648 S.E.2d 504 (2007). When the trial court makes the required verification at a permanency planning review hearing, the court may "consider information from the parents, the juvenile, the guardian, any person providing care for the juvenile, the custodian or agency with custody, the guardian ad litem, and any other person or agency that will aid in the court's review." N.C. Gen. Stat. § 7B-906.1(c) (2015).
Here, the trial court made findings regarding Mr. and Mrs. W.'s employment and income, as well as Mrs. W's availability to care for Holly "on a twenty four hour a day basis." The court further found as fact:
17. That the Court has explained to [Mr. and Mrs. W.] the requirements of guardianship pursuant to N.C.G.S. 7B-600 and they have expressed their understanding of those requirements and their willingness to undertake the guardianship relationship as it relates to [Holly].
Respondent contends the trial court's finding is not supported by sufficient evidence. Specifically, Respondent cites the trial court's examination of Mrs. W. and concedes it was sufficient to satisfy section 7B-600 as to her, but asserts there was insufficient evidence to provide verification that Mr. W. understood and accepted the legal significance of guardianship. We disagree.
The trial court's findings of fact are supported by the DSS court report, which was received into evidence without objection and incorporated by reference into the court's order by stipulation. The report, as well as prior court reports, indicated that both Mr. and Mrs. W. were willing to provide "permanent" care for Holly. The trial court also questioned Mrs. W. in accordance with N.C. Gen. Stat. § 7B-600 regarding whether she understood the responsibilities of guardianship, and specifically whether both she and Mr. W. had discussed being guardians, and their willingness to be Holly's guardians. Mrs. W. responded affirmatively. See N.C. Gen. Stat. § 7B-906.1(c) (The trial court may "consider any evidence, including hearsay evidence ... that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition"). Thus, we conclude the court reports, as well as Mrs. W.'s testimony, support a conclusion that both Mr. and Mrs. W. accepted the responsibilities of guardianship. Cf. In re L.M. , 238 N.C. App. 345, 348-49, 767 S.E.2d 430, 433 (2014) ("[T]he evidence before the trial court tended to relate to the foster father's role in raising [the juvenile] and his desire to continue doing so; there was no evidence that the foster mother accepted responsibility for [the juvenile]."). Accordingly, we hold the trial court complied with N.C. Gen. Stat. §§ 7B-600(c) and -906.1(j).
AFFIRMED.
Report per Rule 30(e).
Judges DILLON and DIETZ concur.

Pseudonyms are used to protect the identities of the juveniles and promote ease of reading.

Respondent is not the father of Wayne or David.

Effective 1 October 2015, North Carolina General Statute § 7B-507(b)(1) has been repealed for all "actions filed or pending on or after that date." N.C. Gen. Stat. § 7B-507(b)(1) (2015).